### DOWNING et al. v. OUTERBRIDGE.

(Circuit Court of Appeals, Second Circuit. April 8, 1897.)

**1. CONVERSION—MEASURE OF DAMAGES.**

In an action by a dealer in flowers in Bermuda for conversion of a quantity of flowers intrusted to defendant for delivery to plaintiff's customers in New York, the measure of damages is the market value of the flowers at the time and place of conversion; but an instruction to the jury that they may give a verdict for "what the flowers were worth to the plaintiff here in the defendant's hands to go to the plaintiff's customers" is not erroneous, the jury being elsewhere charged that they

could give nothing for injury to the plaintiff's reputation with his customers, or what he might have to pay back.

**2. SAME—PUNITIVE DAMAGES—INSTRUCTIONS.**
It is not error, in an action for conversion. to charge the jury that, if they can say from the evidence that the defendants dishonestly overrode the rights of the plaintiff for their own purposes, knew that the goods in question were his not theirs, and, disregarding his rights, took the goods for their own uses, punitive damages may be awarded.

**3. SAME—CONVERSION BY EXPRESSMAN—NEGLIGENT MARKING.**
In an action against an expressman for conversion of goods intrusted to him for delivery, and which he knew belonged to the plaintiff, the fact that the plaintiff may have been negligent in marking the goods is no defense.

In Error to the Circuit Court of the United States for the Southern District of New York.

. This case comes here on writ of error to review a judgment of the circuit court, Southern district of New York, entered upon a verdict for $1,535 in favor of defendant in error, who was plaintiff below. The facts sufficiently appear in the opinion.

C. P. McClelland, for plaintiffs in error.

Edward C. Perkins, for defendant in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. Plaintiff, in the year 1895, was a producer and shipper of lilies in the Island of Bermuda. Defendants carried on an express business between Bermuda and New York, and also sold lilies in this country. In the winter of 1895 plaintiff made contracts with tourists in the Island of Bermuda to sell them boxes of cut flowers to be delivered in various parts of the United States at Easter. The goods were to be delivered in time for Easter decorations. They were to be "delivered at the door" of the respective purchasers. Some time before Easter, defendants, by their agent in Bermuda, agreed in writing with plaintiff "to express to the United States, Canada, etc., as per schedule list, * * * boxes of cut flowers," etc. Under this contract plaintiff delivered the goods in question—210 boxes of lilies and other cut flowers—to the agent, on the morning of Thursday, April 4, 1895 (the following Sunday was the Sunday before Easter), to be shipped by the steamer Trinidad, which was to sail for New York at 12 o'clock on that day. The boxes were marked with numbers, and, after receiving them, the agent marked them with a cross, which was the shipping mark of Downing & Co. Outerbridge also gave the agent a shipping list, containing a column, the numbers corresponding to those on the boxes; against each number the name and address of the person to whom the box bearing that number was to go; and, in a separate column, the whole number of boxes to go to the person whose name was set opposite. Defendants had contracted to supply their customers with somewhere between 1,500 and 2,000 boxes. They expected to receive for this purpose, by the same steamer, between 1,800 and 2,000 boxes on their own account. The steamer brought plaintiff's 210 boxes; 610 boxes, received by defendants, as expressmen, to be shipped to various persons whose names and addresses were on the

boxes; and 711 boxes on defendants' own account,—in all 1,531. The jury found—and there was abundant evidence to sustain their finding—that defendants, knowing that the 210 boxes were plaintiff's, and not theirs, appropriated them to their own use, and sent them to their own customers in place of the boxes which they were expecting, but did not receive.

The first error assigned is that verdict should have been directed for defendants on the ground that the title had passed to the consignees, and plaintiff had no interest or possession or right of possession to support an action. No objection or exception raised this point in the circuit court, and it cannot be considered here.

The second error assigned is that the court improperly instructed the jury as to the measure of damages. The action is in tort, for conversion, and the proper measure of damage was the value of the merchandise at the time and place of conversion. Defendants duly excepted to so much of the charge as instructed the jury that they might give a verdict "for what these flowers were worth to him to send to his customers; * * * what they were worth to the plaintiff here in the defendants' hands to go to plaintiff's customers." They were worth to the plaintiff what he would have had to pay here at that time for others to replace them and send to his customers, and what he would have to pay for such flowers in this market at that time would, of course, be the market price. Standing alone, the above-quoted sentences might perhaps be understood by the jury as implying that they might give him some special damage aside from the market price; but, when the charge is considered as a whole, it is apparent that the jury could not have been misled, for the court expressly charged them that they were to give "nothing for the injury to his reputation" for failure to fulfill his contracts with his customers; that they were not to take account of "what he had to pay back, and has not paid back or has paid back, and how he has paid it back. We have nothing to do with that." There was evidence in the case of the price at which lilies sold in New York and Brooklyn at that time.

It is next assigned as error that the jury were allowed to find punitive damages. On this branch of the case the court charged:

"If you can say from the evidence in the case that the defendants dishonestly overrode the rights of the plaintiff for their own purposes; knew that these boxes of flowers were his, and not theirs; and, disregarding his right to have them go on to his customers, they took them and sent them to their own customers,—you can look at all that, and say whether you think they ought not to pay a further sum in damages; to stamp upon their conduct what you think of such things; to let the defendants know how a jury of honorable men view such things. Give such further sum as you think would be just about right to teach them and other folks how a jury look at such things; to teach them and every body else better. You will notice that you are not to go to that extent—not to allow anything for that—unless you see that the defendants are guilty of wantonly overriding the plaintiff's rights. Do not give anything unless you see that they were willfully wrong; that they knew better than to send the plaintiff's goods to their customers. You will not allow anything unless you see that. But if you do see that the defendants themselves understood this, and knew that these were not their flowers, and that they had no right, under any circumstances, to send them to their customers, if you can see that they were dishonest about it, and were not fair about it, and did not give

their customers a fair chance, and did not recognize his right, then give just as much as you think is right and proper to stamp on that conduct your condemnation. You will not allow anything unless you can see something that deserves it."

There was evidence in the case sufficient to sustain a finding that defendants knew that these boxes belonged to plaintiff, but nevertheless used them to supply the shortage on their own shipment, selling and delivering them to their own customers. If the jury found this to be the fact, and their verdict, which is for about $1,000 in excess of the market price, proved that they did, punitive damages were properly given on the ground that defendants acted with reckless and wanton indifference to another's rights.

No error was committed in excluding evidence as to plaintiff's reputation and financial standing in Bermuda. The jury were expressly instructed that they could not give any damage for supposed injury to reputation. No evidence as to plaintiff's reputation "for truth and veracity" was excluded.

Defendants excepted to the court's refusal to charge that, "if plaintiff was negligent, in shipping the boxes of flowers, in failing to put on the names and addresses of the persons for whom they were intended, then he cannot recover." If this action were for damages for delay in delivering, or for failure to deliver, it would have been quite proper for the jury to consider how far this was due to plaintiff's own negligence; but in the case at bar no such question arises. Defendants knew plaintiff had 210 boxes on board, which he had delivered to their agent, and knew which boxes they were. The fact that he had neglected to mark the boxes otherwise than with a number, or to put the addresses on them, was no excuse for their converting to their own use merchandise which they knew belonged to another. The judgment of the circuit court is affirmed.