HERR et al. v. TWEEDIE TRADING CO.

TWEEDIE TRADING CO. v. HERR et al.

(Circuit Court of Appeals, Second Circuit. August 5, 1910.)

Nos. 15, 16.

1. SHIPPING (§ 113*)—BILL OF LADING—FREIGHT CONTRACT—CONSTRUCTION—"CRAFT."

A bill of lading provided that, unless the bill by express written agreement was to bear the cost of lighterage, it was agreed that the lighterage was for account and risk of the cargo, custom of the port notwithstanding. The bills contained a written clause that the freight was to be delivered by steamer or lighter at the steamer's option at a certain railroad in Rio de Janeiro, provided there was enough water and length to get alongside dock. The freight contract was indorsed, "These rates include delivery * * * providing there is water enough for craft to get alongside dock, and also include all derrick costs in discharging." *Held*, that the bill of lading did not provide that the cost of lighterage should not be at the expense of the cargo, but should be construed to mean that, if there was 'water and length enough to get the steamer alongside the dock, it was then at the steamer's option to discharge at the dock, or deliver by lighter at her own expense; the word "craft" meaning the steamer in question.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. §.113.*

For other definitions, see Words and Phrases, vol. 2, p. 1707.]

2. SHIPPING (§ 108*)—LIBEL—CONSTRUCTION.

Where a libel for failure to deliver the tonnage contracted for alleged that after the shipment of 39 tons before April 1, 1907, subsequent shipments were delivered and accepted as under the shipping contract, and such allegation was admitted in the answer, it was properly determined that all the shipments were made under the contract, though there was some evidence to the contrary.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 108.*]

3. CUSTOMS AND USAGES (§ 19*)—CONSTRUCTION OF CONTRACT—PROOF.

A custom asserted among persons engaged in marine transportation, as to the construction of a contract, will not be applied where the witnesses examined as to the custom differ with reference thereto.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 41-46; Dec. Dig. § 19.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. Shipping (§ 108\*)—Contract—"Ton."**

> Where a freight contract engaged steamship room between New York and Rio de Janeiro for "approximately $1500/2000$ tons," electrical machinery and apparatus, and also contained the schedule fixing dead weight and space rates at the steamer's option, the word "ton" should be construed to mean a dead weight long ton, notwithstanding an option authorizing the ship to charge freight at space rates.

> [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 108.\*
> For other definitions, see Words and Phrases, vol. 8, pp. 6996–6997.]

Appeals from the District Court of the United States for the Southern District of New York.

Libel by E. M. Herr and others, as receivers of the Westinghouse Electric Manufacturing Company, against the Tweedie Trading Company, and cross-libel by the Tweedie Trading Company against E. M. Herr and others, as receivers. From a decree in favor of the receivers and dismissing the cross-libel, the Tweedie Company appeals. Decrees reversed in both cases, with instructions.

Ralph James M. Bullowa and F. M. Brown, for appellant.

Convers & Kirlin (J. Parker Kirlin and Charles R. Hickox, of counsel), for appellees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. January 22, 1908, the receivers of the Westinghouse Electric Manufacturing Company filed a libel against the Tweedie Trading Company to recover charges alleged to have been wrongfully exacted for lighterage and demurrage in connection with consignments of electrical machinery by the steamer Glen Mae in September and for lighterage ex steamer Regina Elena in November, 1907, at Rio de Janeiro. June 3, 1908, the Tweedie Trading Company filed a libel against the Westinghouse Company to recover dead freight on the deficiency of machinery agreed to be shipped. The district judge directed a decree in favor of the receivers of the Westinghouse Company, libelants, and dismissed the cross-libel of the Tweedie Company.

We will take up the libel for consideration first.

The freight contract provided that it was made subject to the Tweedie Company's bill of lading, article 12 of which is as follows:

"* * * But unless this bill of lading by express written agreement is to bear the cost of lighterage it is expressly understood and agreed that the lighterage always both loading and discharging is for account and risk of the cargo, custom of the port to the contrary notwithstanding."

There was also on the freight contract the following indorsement:

"These rates include delivery at the Ferro Carrille Central Railroad, Rio de Janeiro, providing there is water enough for craft to get alongside dock and also include all derrick costs in discharging."

There was also the following written clause in the bills of lading:

"To be delivered by steamer or lighter at steamer's option at the Ferro Carrille Central Railroad, Rio de Janeiro, provided there is enough water and length to get alongside dock and also include all derrick costs for discharging as per indorsement."

These various provisions must be construed as consistent with each other if possible, and we think they can be. The lighterage was by the bill of lading to be for account and risk of cargo unless the bill of lading provided expressly to the contrary. We think it did not. If there were water and length enough to get alongside the dock, it gave the steamer the option of going alongside or delivering by lighter at her own expense. This privilege might be valuable in case of small shipments.

The indorsement on the freight contract made no mention of lighters, but required delivery at the dock provided there was water enough for "craft" to get alongside, which we think means for the steamer to get alongside. Presumably there would always be water enough for lighters. In other words, the lighterage was to be for account of the steamer only if she could get alongside, and did not do so.

It is argued that the Tweedie Trading Company by lightering at its own expense previous shipments ex steamers Meldroskin and Indiana construed the clause otherwise. But those consignments were small, and there is no proof that the steamers could not have gone alongside if they had wished to do so. While there was no special written clause on these bills of lading, they were subject between the parties to the indorsement on the freight contract. The district judge said:

"The ship's obligation was to make delivery on the Ferro Carrille dock, and until such delivery was made her contract was not complete."

If this be admitted, the question remains: At whose expense lighterage was to be, if lighterage were necessary? As the steamers could not go alongside, we think the libel of the receivers should have been dismissed.

We come now to the cross-libel. The claim is for demurrage of steamer Regina Elena and for dead freight on the difference between the tonnage shipped and the tonnage called for by the freight contract. The copy of the freight contract annexed to the libel was as follows:

Freight Contract.

New York

........ March 22nd, 1906.

No. 5377            Boston

ENGAGED freight room for account of Westinghouse Elec. & Mfg. Co. per Steamers    to arrive, expected to sail from November, 1906 to April, 1907, for port of Rio de Janeiro      M Tweedie Trading Company Agents for Approximately 1500/2000 tons Elec. Machy. & Elec. Apparatus.

Pcs. or Pckgs.   up to 3000#-22½ cu ft or 45c. per 100# strs option
"   "   " 3000#    " 5000#-25c.   "    " 50c.   "    "    "    "
"   "   " 5000#   " 20000#-45c.   "    " 90c.   "    "    "    "
"   "   "20000#    " 27000#-55c.   "   " 1.10   "    "    "    "
"   "   "    41500#      77½c. "   " 1.55   "    "    "    "
"   "   "    49000#      87½   "   " 1.75   "    "    "    "
at rates Net Brokerage 2½% and 5 per cent. primage per 2240 lbs. or 40 cu. ft. and subject to the conditions The Tweedie Trading Co. B's/L

Alfred H. Post & Co.,

Per N. L. Wills,

Freight Prepaid.                               Brokers.

The Westinghouse Company shipped less than 1,500 dead weight tons, but paid freight on 1,533 measurement and 233 weight tons, or 1,766 payable tons in all. The receivers claim that this fulfilled the contract, while the Tweedie Company claims that the Westinghouse Company was bound to ship at least 1,500 weight tons. This is the important question involved in the case. Another issue, however, was sought to be raised by the Tweedie Company, viz., that only about 39 tons having been shipped before April 1, 1907, the subsequent shipments were not made under the freight contract. But the libel alleged that the subsequent shipments were delivered and accepted as under the contract, and this allegation was admitted in the answer. Some proof to the contrary was taken at the trial and some in depositions taken in this court, although no leave was given for additional proofs on this subject. We think the trial judge rightly held that all the shipments made by the Westinghouse Company were made under the contract of March 22d.

Application was granted in this court to take additional proofs on the questions: (1) Whether there is a custom in this port whereby the freight contract must be construed as calling for from 1,500 to 2,000 dead weight tons; (2) whether the Westinghouse Company furnished specifications of the cargo before the freight contract was signed; (3) whether the copy annexed to the libel is a correct copy of the freight contract.

The last question is naturally to be considered first. The original freight contract was executed on a printed form in duplicate, and both originals have been lost. The copy of the contract annexed to the libel was admitted by the Tweedie Company to be correct in its answer and in its cross-libel and by its witnesses at the trial. Proofs have been offered in this court that the word "approximately" and the words "five per cent. primage per 2,240 lbs. or 40 cubic feet" were crossed out of the printed form. The facts that the word "approximately" is not appropriate when the number of tons is fixed at "from 1,500 to 2,000," and that provision for primage was unnecessary because none had been contracted for, and that reference to tons of 2,240 pounds or 40 cubic feet was unnecessary because rates of freight had been previously provided per 100 pounds, and one cubic foot do not prove that these words were not left in the printed contract. Without attaching great importance to their presence or absence, we hold that the copy annexed to the libel is correct because sufficient proof has not been furnished to overcome the admissions of the Tweedie Company in its pleadings and by its conduct.

We do not think that any custom has been established to the effect that a contract for shipment of a given number of undefined tons at a rate of freight per pound or at steamer's option per cubic foot requires the delivery of dead weight tons. Such a question has rarely arisen. The witnesses examined differ, and we are left to construe the contract from its terms.

The practice is undisputed that contracts to carry dead weight tons generally give the carrier the option to collect freight by weight or measurement in order to cover large but light packages. It is also undisputed that when the word "ton" is used alone a dead weight ton

is meant and in foreign trade long tons of 2,240 pounds. We think the word "ton" in this contract in connection with the quantity to be delivered is to be taken in the usual sense as a dead weight ton, and that the presence of the option usually given to carriers as to charging freight does not alter the meaning of the word.

During the early negotiations the parties had been considering rates of freight for 800 to 1,000 tons covering about 2,000,000 pounds. Without discussing all the testimony pro and con as to whether specifications, and, if so, what specifications, were furnished by the Westinghouse Company before the contract was signed, we are of opinion that the parties used the word in the same sense in connection with this contract for a larger quantity.

The decrees are reversed in both cases, with instructions to the court below to enter a decree dismissing the libel and an interlocutory decree for the cross-libelants with the usual order of reference; costs in both cases to the Tweedie Trading Company.