### SOUTHERN EXPRESS CO. v. REAGIN.

(Circuit Court of Appeals, Fourth Circuit.   September 14, 1915.)

#### No. 1355.

1. CARRIERS ⊕⇒94—EXPRESS COMPANY—REFUSAL TO DELIVER.
    Evidence, in an action to recover the value of a typewriter, *held* to show that defendant express company had refused to deliver it upon payment of the transportation charges.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ⊕⇒94.]

2. CARRIERS ⊕⇒91—EXPRESS COMPANY—CONVERSION.
    An express company refusing to deliver property to the consignee, upon his payment of its charges, was guilty of a conversion.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 338–355; Dec. Dig. ⊕⇒91.]

3. CARRIERS ⊕⇒94—EXPRESS COMPANY—ACTION FOR CONVERSION—DAMAGES.
    In an action against an express company for the conversion of property, the measure of damages was the value of the property.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ⊕⇒94.]

4. CARRIERS ⊕⇒94—EXPRESS COMPANY—ACTION FOR CONVERSION—QUESTION FOR JURY—RATIFICATION.
    In an action against an express company for the value of a typewriter which it had refused to deliver to the consignee on his payment of charges, *held* on the evidence that whether the willful refusal was ratified by an officer of the company empowered to do so was for the jury.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ⊕⇒94.]

5. CARRIERS ⊕➡94—ACTION FOR CONVERSION—INSTRUCTIONS—APPLICATION TO EVIDENCE.

In an action against an express company to recover the value of a typewriter which had been wrongly addressed and which it had refused to deliver to the consignee on his payment of transportation charges, where the evidence as to whether such refusal had been ratified by any officer authorized thereby was conflicting, defendant's requested instruction predicated on the absence of any evidence of ratification was properly refused.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ⊕➡94.]

6. CARRIERS ⊕➡94—REFUSAL TO DELIVER—CONVERSION—ACTION — INSTRUCTIONS.

In an action against an express company for the conversion of a package which had been missent, by refusing delivery on payment of charges, the court's refusal to charge that the express agent at the sending office, in writing the tag to be placed on the package, was acting as the amanuensis of the shipper, was proper, where the question of plaintiff's knowledge that the tag misstated the destination had already been submitted to the jury with instructions that if the mistake was the shipper's he could not recover, and was in any case not prejudicial to the defense, as the matter was only important on the question whether the company could properly charge for transportation from the mistaken to the proper destination, and payment of full transportation had been tendered.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ⊕➡94.]

7. CARRIERS ⊕➡80—EXPRESS COMPANY—ACTION FOR DELIVERY.

Upon the shipper's mistake in the address of a parcel, an express company was not liable if it went to the wrong place; but if its own agent made such mistake it would be bound to deliver it to the proper place, without charge from the place to which it had been sent, or to return it to the shipper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 273; Dec. Dig. ⊕➡80.]

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. M. Smith, Judge.

Action by B. J. Reagin against the Southern Express Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. Nelson Frierson, of Columbia, S. C. (Barron, McKay, Frierson & Moffatt, of Columbia, S. C., on the brief), for plaintiff in error.

Frank G. Tompkins, of Columbia, S. C. (F. W. Cappelmann, of Columbia, S. C., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. The defendant in error will hereinafter be referred to as "plaintiff," and the plaintiff in error as "defendant"; such being the relative positions the parties occupied in the court below.

The plaintiff brought this action against the defendant company in the circuit court of common pleas for Richland county, S. C., for the purpose of recovering damages against the defendant for the alleged

conversion of a typewriter. The plaintiff's demands for judgment embraced three items of damage, to wit: (1) The value of the typewriter; (2) five times the value of the typewriter as a penalty, under a statute of the state of South Carolina; and (3) punitive damages in the sum of $5,000.

On a motion of defendant the cause was removed to the District Court of the United States for the Eastern District of South Carolina on the ground of diversity of citizenship. Upon the trial of the cause the District Judge held that plaintiff was not entitled to recover the penalty sued for as the second item of his alleged damage. Neither party excepted to the ruling of the court as to this phase of the controversy.

The jury brought in a verdict in favor of the plaintiff for $45, the value of the typewriter, and $500 exemplary damages, and the cause comes here on writ of error.

The allegation to the effect that just prior to the bringing of this suit the plaintiff, in company with one of his attorneys, called at the office of the express company in Columbia and inquired if the typewriter in question was there, and that the agent at that place "replied in the affirmative," was supported by evidence offered by the plaintiff. It was also shown that the plaintiff was refused permission to see the machine; that he thereupon demanded possession of it, and offered to pay any transportation charges that might be held against it; that his request was refused, the agent of the company at the time stating that possession of the typewriter would not be relinquished unless the plaintiff would pay a claim which the company had against him, such claim being entirely independent of any charge which they had against plaintiff for transporting the machine.

It was further shown that the plaintiff shipped his typewriter from Central, S. C., to Huntingburg, Ill., on the 24th day of March, 1911; that by an error the machine was shipped to Huntington, Ill., and did not reach the plaintiff in due course of time; that from April, 1911, until April 20, 1914, plaintiff was constantly demanding the possession of his typewriter, and the defendant company through its officers and agents, including the superintendent located at Charlotte, N. C., steadfastly refused to deliver it unless he would pay certain claims which they held against him by reason of the difference between salary due him and certain charges, known as expense sheets, which they had found against him after he left their employ in 1911. It appears from the evidence that it was customary to charge against each office any failure to collect the proper amount of express or any loss caused the company by the act of the agent. It did not appear that there was anything unusual about this, and the plaintiff explained that he had always been willing to pay it, if they would give these expense sheets, as they customarily did, so that he might, as is usually done, put in his claim where it appeared from these sheets that the mistake was not his but that of some other agent.

It also appears that on the 24th day of April, 1914, the plaintiff, after having endeavored for some three years to get his typewriter, made a demand upon the express company at Columbia for the ma-

chine, and tendered the charges; that the defendant refused to surrender possession of the same. However, it was shown by the evidence of defendant's witnesses that they had no recollection of such demands or tender ever having been made.

The first question raised by defendant is that the learned judge who heard this case in the court below erred in charging the jury that the plaintiff was entitled to recover the value of the typewriter in any event. This raises the question as to whether the defendant was justified in holding the machine until the plaintiff had satisfied a certain claim which they had against him, such claim being in no wise connected with the transportation of the machine.

It fully appears that many demands were made upon the company by plaintiff for the possession of the typewriter, all of which were made by letter except at the time that the demand was made by the plaintiff in person on April 24th, as hereinbefore stated. It further appears that at the time these demands were made by letter the plaintiff was met with the excuse that the officer upon whom such demand was made was not in possession of the machine, but that it was at some other point and in the possession of some other officer of the company, and that therefore the official upon whom such demand was made was not in a position to make such delivery. The plaintiff, in testifying as to what occurred at the time the last demand was made, said:

"Subsequently I was referred by the general officer of the Southern Express Company to Mr. Havis, the agent at Columbia. I went to see him, and he told me if I would pay him a certain amount of money he would arrange later for the delivery. I think at first he demanded a sum of money somewhere in the $60s, then I think he agreed to make it somewhere in the $30s. The first time I saw him I went to him by myself, before I employed Mr. Cappelmann. He then claimed about $62 and some cents, about the same amount that the man in Jacksonville had claimed. I told him please to hand me the proper receipts and I would send him the money; asked him to please give me the proper receipts, that the money was here. He said he would not do it. I asked him for my typewriter. He said he would not give it. I asked him to let me see it. He said I could not see it. After that I employed an attorney, Mr. Cappelmann. I went back to the office with Mr. Cappelmann and saw Mr. Havis, the agent. I made a demand on him for my typewriter. He said that I would have to pay them a certain sum of money, somewhere in the $30s; that I would have to pay him that difference before he would entertain any delivery of the machine at all. He said that the machine was there, but he did not show it to me.

"Q. You had been working for the Southern Express Company for a good many years previous to the time you left Central, had you not? A. Yes, sir.

"Q. Did you offer to pay him the money there that day? A. Yes, sir.

"Q. Pulled the money out? A. Yes, sir.

"Q. What was it you wanted him to give you before you paid him the $30 or $60, whatever he asked? A. I wanted him to give me the papers representing this amount of money, which would be my receipt.

"Q. You mean the file? A. Which showed that I had paid that money. They refused to give me the typewriter, and my attorney was present at the time. I offered to pay all charges for the shipment of the typewriter. I have never gotten my typewriter. I next brought suit."

Mr. Cappelmann's testimony was as follows:

"I called on the Southern Express Company with Mr. Reagin in regard to this typewriter in April of this year. I received a letter dated April 11, 1914:

"'Columbia, S. C., April 11, 1914.

"'Mr. F. W. Cappelmann, Attorney, City—Dear Sir: I have your favor of April 10th with reference to claim of B. J. Reagin. The typewriter has been sent to Columbia and Supt. Skaggs advised me that he would be in Columbia next week and handle the matter with you.

"'Respectfully,                                    E. B. Havis, Agent.'

"I called at the express company with Mr. Reagin. We saw Mr. Havis when we got there.

"Q. What conversation passed between Mr. Havis and yourself and Reagin? State what took place. A. We went to the express office, and I told Mr. Havis we were coming to see about the typewriter matter. We asked if the typewriter was there, and Mr. Havis said that the typewriter was there in the office. I asked if we could see it. He said we could not see it, and I demanded the typewriter. He said: 'We will give you the typewriter if Mr. Reagin will pay us what is due us.' I made the statement that we considered the matter of the typewriter and the matter of what was due the Southern Express Company by Reagin as two separate matters entirely. He says : 'We cannot give you the typewriter unless Mr. Reagin pays.' Mr. Reagin pulled out a roll of bills and said: 'How much do I owe you?' He said: '$30.42.' Mr. Reagin started to count the money out, and he said: 'If I pay you I want those expenses.' 'Expenses' was the word he used, and I asked what he meant by that. Mr. Reagin said he meant the papers which showed where this money had to be paid by him, how many errors were paid, and Mr. Havis said he could not have them, and Mr. Reagin said he could not pay him unless he got those papers. I asked what was the benefit of Mr. Reagin having the papers. He said that if any other party had made a mistake in this connection he could then recover from the other party the money he had been forced to pay this company. I believe that is all that took place on this occasion.

"Mr. Reagin offered to pay all express charges, everything that was due them at all on the typewriter. We did not see the typewriter, but I understood from Mr. Havis that it was there, in the express office at Lady street. I had seen Mr. Skaggs on a previous occasion, not at that time. I called there individually, without Mr. Reagin, before that; saw Mr. Skaggs and Mr. Havis. Mr. Skaggs is superintendent of the express company. He came here from Charlotte. I demanded the typewriter from him. This was preliminary, though, this question of negotiation; he said he would be glad to take it up with us. That was before I got that letter. He did not give me the machine."

Mr. Havis, the agent for defendant company at Columbia, testified as follows:

"Witness: He said, 'I will pay the expense, no matter what the amount is, provided you give me the papers.' I told him the papers were the property of the Southern, that I would give him a receipt for what he paid, showing what it was for; he declined to pay on those grounds.

"Q. Anything else said? A. Mr. Cappelmann then asked me if I had the typewriter, and I told him, 'Yes.' He said, 'Let's see it.' I said: 'I can't do that; the box has never been opened; it is in the original box.' I don't think he demanded the typewriter; I don't recall that.

"Q. Have you any recollection whether or not he made a demand for the typewriter to be delivered then? A. I do not.

"Q. You mean to say that Mr. Cappelmann and Mr. Reagin did not come in there and offer to pay you the charges on the machine if delivered to them? A. No, sir; I don't remember.

"Q. Will you swear that they did not do that? A. No, sir."

From the foregoing it appears that the plaintiff demanded possession of the machine and tendered the charges thereon, and that the same were refused by the agent. The testimony of the plaintiff on this point

is positive, while the evidence offered by the defendant is negative, to say the most of it; the statement of the witness in reply to the question as to whether Mr. Cappelmann and the plaintiff went to the office and offered to pay the charges on the machine if delivered being, "No, sir, I don't remember," and, when further questioned as to whether he was willing to swear that the plaintiff and Cappelmann did not make the demand at that time, replied that he could not swear that such was the case.

[1-3] This testimony, when considered in connection with the correspondence contained in the record, clearly shows that the defendant refused to deliver the machine upon the payment of the transportation charges. Therefore the instructions of the court below to the effect that there had been a conversion by the defendant of the plaintiff's property in this instance, and that the jury must find for the plaintiff the value of the property thus converted, were eminently proper in view of the facts established by the evidence offered by the plaintiff. The rule as to what constitutes a conversion is so well settled by the courts, as well as by the text-writers, that we do not deem it necessary to enter into a discussion of the same further than to cite the following authorities: Bigelow, Torts, 428; 38 Cyc. p. 2005; Cooley on Torts, 448; 2 Greenleaf's Evidence, § 642; Abraham v. Southwestern R. Bank, 1 S. C. 441, 7 Am. Rep. 33; Reid v. Colcock, 1 Nott & McC. (S. C.) p. 592, 9 Am. Dec. 729.

[4] It is also insisted that the court below erred in refusing defendant's third request to charge, as follows:

"Exemplary or punitive damages are not recoverable against a principal in an action based on the act of an agent, where there is a total absence of evidence showing that the principal participated in the wrongful act, or that he expressly or impliedly authorized it, either before or after its commission."

This request was refused by the presiding judge in the following words:

"Refused as not applicable to this case. If there was a total absence of evidence I would not send it to the jury."

Counsel for plaintiff insists that this assignment is wholly without merit; that the plaintiff was endeavoring to get possession of the machine or the value of it; and that such was his purpose in applying to the officers and agents of the defendant company almost continually from the last of March, 1911, until the 20th of April, 1914.

During this period it appears that demands were made upon Superintendent Sadler, Charlotte, N. C.; the agent at Central, S. C.; Mr. Richardson, inspector, Atlanta, Ga.; Mr. Havis, agent at Columbia, S. C.; Mr. W. S. Langford, agent at Newberry, S. C.; Mr. Mullins, chief clerk for the superintendent, Charlotte, N. C.; and also to Mr. Warren, successor to Mr. Mullins, Mr. J. S. Holland, cashier, Columbia, S. C., and Mr. Skaggs, superintendent, Southern Express Company, Charlotte, N. C.

[5] Under these circumstances, we think that there was sufficient evidence to go to the jury on the question as to whether or not the willful act was ratified or approved by an officer of the company having

a right to ratify it. There being a conflict of evidence on this point, we think the action of the court below in refusing to grant this request was eminently proper.

It is further contended that the court below erred in refusing to instruct the jury that if the agent of the company wrote the directions on the tag at the request of the plaintiff, and the plaintiff himself then affixed the tag to the shipment, the misdirection of the same was the act of the plaintiff and not the defendant.

It is admitted by counsel for defendant that this point is not based upon exception to the failure of the court to charge as requested. However, it is insisted that it was the duty of the court to consider this as "a plain error not assigned" under rule 11 of this court (193 Fed. vii, 112 C. C. A. vii). An examination of the record discloses the fact that the court below in its charge with reference to this subject said:

"The receipt given on that day by the agent of the express company is for Huntingburg, but the machine was shipped to a different place called Huntington. Now, gentlemen, you have heard the testimony upon that point. That is peculiarly a question for the jury. The receipt made out in the handwriting of the agent himself is Huntingburg; the tag which he claims to have given out at the same time to be put upon the package is Huntington. Both are in his handwriting; the receipt and the tag are in the handwriting of the agent. The agent at or about the same time wrote in the receipt which he delivered to the shipper Huntingburg, and he claims that he wrote also on the tag which he mailed with the package that he wrote Huntington. He says he did that at the request of the shipper. If it was a mistake of the shipper, if he made the mistake, then the express company was not responsible if it went to the wrong place; but, if the agent of the express company was the party who made the mistake, then the express company would be responsible to this extent, that they would be bound to transport it to the proper place free of charge from the place to which it had been sent, or return it to the shipper. Now it is for you to say from the testimony by whom the mistake was made. I charge you, if the mistake was made by the express company, then the shipper was not responsible for the transportation charge to the wrong point different from what he ordered. If that was his mistake, he would be responsible. But, whether it was shipped to the wrong point or not, the typewriter still remained the property of Reagin, and upon his demand at the place or wherever it could be found he was entitled to it. He was entitled to it without the payment of any transportation charges if the shipment to the wrong place was the fault of the express company's agent, and he was entitled to it upon the payment of the transportation charges, wherever it was in the possession of the company; it remained his property."

After the court had given the foregoing instructions to the jury, attorney for defendant made the request upon which this contention is based, and in presenting the matter to the court said:

"Mr. Frierson: Will the court rule whether or not they find that Mr. Franklin wrote it down at the dictation of Mr. Reagin, and, if they find the further fact that Mr. Reagin attached it to the box himself, will the court rule that Mr. Franklin did not act as the amanuensis of Mr. Reagin?

"Court: I will not rule that he did or did not; I will leave it to the jury to say whether that was done under circumstances which showed that Mr. Reagin knew the direction was wrong and was acquainted with the fact that it was going to Huntington and not to Huntingburg."

[6, 7] It will be seen by the foregoing that the question as to whether plaintiff knew that the directions were improper was, among other things, submitted to the jury, and under the circumstances the refusal

of the court to grant the request in the form in which it was presented could not be deemed to be prejudicial to the rights of the defendant, inasmuch as it could only have been material to the question as to whether the company had a right to charge transportation, and as respects this matter it appears, as we have stated, that full transportation was tendered at the time the machine was demanded in Columbia, and in addition thereto the court in the general charge fully explained the rights of the defendant, in which it was stated, among other things, that if the mistake of direction was that of the shipper the express company was not responsible if it went to the wrong place, and if, on the other hand, it was the agent of the express company who made the mistake, the express company would be bound to transport it to the proper place free of charge, from the place to which it had been sent, or return it to the shipper.

For the reasons stated, the judgment of the lower court is affirmed.