## THE ST. JOHNS N. F.

(Circuit Court of Appeals, Second Circuit. March 27, 1922.)

No. 218.

1. **Shipping ☞110—Shipper held to have exercised option to ship under deck.**

Where a freight contract provided for shipment on or under deck, it gave the shipowner the option to determine where the cargo should be shipped, and the issuance of a clean bill of lading, which designates a stowage under deck, is an indication by the shipowner of its election to stow under deck, and binds the shipowner by its terms.

2. **Shipping ☞123—Ship is liable for jettisoning cargo carried on deck without authority.**

A ship, which carried on deck a cargo which was required by the bill of lading to be carried under deck, is liable to the cargo owner for loss occasioned by jettisoning the cargo which would not have been necessary, if it was carried under deck, since the bill of lading must be deemed the only contract between the owner and the ship.

3. **Shipping ☞132(5)—Evidence held to show consignee did not consent to carriage on deck.**

Evidence that the consignee was a different corporation from the shipper, and that on receiving a clean bill of lading it paid a draft attached thereto and insured the property as carried under deck, shows that the consignee did not assent to stowage on deck, so that the provision of the bill of lading is controlling, and should be read as an absolute obligation to load under deck.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Shipping ☞140—Deviation as to manner of carrying cargo prevents reliance on limitations in bill of lading.**

A deviation from the manner of carrying the cargo as provided in the bill of lading has the same effect as a deviation from the route, and prevents the carrier from relying upon any limitations on its liability contained in the bill of lading, since by such bill of lading the carrier has prevented the owner from protecting himself by insurance against loss of the goods while being carried contrary to the terms of the bill.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the S. A. Companhia Geral Commercial do Rio de Janeiro against the schooner St. Johns N. F., of which the St. Johns N. F. Shipping Corporation was claimant. Decree for libelant, and claimant appeals. Affirmed.

Certiorari granted 257 U. S. ——, 42 Sup. Ct. 587, 66 L. Ed. ——. See, also, 272 Fed. 673.

Haight, Sanford, Smith & Griffin, of New York City (Henry M. Hewitt, of New York City, of counsel), for appellant.

Crowell & Rouse, of New York City (E. Curtis Rouse, of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. This appeal is from a final decree awarding damages for the loss of 800 barrels of rosin shipped from New York, consigned to Rio de Janeiro on the schooner St. Johns N. F. in June, 1918. An answer was filed, to which exceptions were interposed on the ground that the answer did not state a defense to the cause of action alleged in the libel. The exceptions were sustained, resulting in a decree for the appellee.

On June 6, 1918, Job & Co., as agents for the schooner St. Johns N. F., entered into a written freight contract with the General Commercial Company, Limited, through its agents, to carry on board the schooner St. Johns N. F. then at the port of New York 800 barrels of rosin "on or under deck" to the port of Rio de Janeiro at the agreed freight of $3 per long ton prepaid. The rosin was loaded on deck, boxed down and planked. A clean bill of lading, dated June 12, 1918, was issued and contained no reference to deck stowage or relieving clauses therefor, or any clause referring to prior freight engagement. On June 19th, the schooner sailed. She was properly manned and equipped and seaworthy in all respects, but before arrival at her port, the deck cargo broke adrift in a hurricane, and it was necessary to jettison the rosin. The invoice cost of the cargo in New York at the time of shipment was $21,037.02, and general marine insurance of the shipment was procured in the sum of $23,200. Upon failure to receive the cargo, the appellee was unable to collect the insurance by reason of the disclaimer of liability by the insurance company because there was a failure to disclose the stowage of the shipment on deck, which risk was not covered by the policy issued. A recovery has been allowed for the market value, with interest, of the rosin at Rio de Janeiro. The freight

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contract permitted a stowage on or under deck at the ship's option. The first question presented is whether the ship was bound by a clean bill of lading, to give under deck stowage, and is liable for the loss due to failure to stow under deck. It is conceded that the loss was due to jettisoning the cargo when it broke loose in the storm. All other cargo was under deck and none of it was lost or damaged. The vessel was not stranded or in collision, and there was no general average. The freight contract was made several days before the bill of lading, and does not contract, by its terms, as to details of shipment. It was a reservation for space and gave to the ship the privilege of exercising an option as to what space should be furnished, whether on or under deck.

[1] Having issued a bill of lading subsequently, it must be deemed that the bill of lading expresses the decision as to what space would be allowed. The bill of lading, because it is silent as to where the cargo was to be stored, does not vary the freight contract. It is argued, on behalf of the appellant, that the contract of shipment did not merge with the bill of lading and that the freight contract controls. It is claimed that by the terms of the freight contract the ship's option may be exercised so as to load on or under deck; but, when it makes its choice, the shipment and the contract are nevertheless made subject to the terms of the bill of lading. A clean bill of lading has long been held to designate a stowage under deck, and the issuance of it is an indication by the shipowner of its election to stow under deck. The Delaware, 14 Wall. (81 U. S.) 579, 20 L. Ed. 779; The Sarnia (C. C. A.) 278 Fed. 459, decided December 14, 1921. In the latter case, this court held that, unless there is an express written agreement to the contrary—or a custom to the contrary is proven—a clean bill of lading obligates the shipowner to stow the cargo under deck. The bill of lading cannot be said to be at variance with the contract of affreightment. The latter provided for stowage at the election of the shipowner, and, having exercised its option by issuing a clean bill of lading, the ship is bound by the terms of the bill of lading, whatever may be the remedies of the shipowners as against other parties. This view has found support in the British courts. The Royal Exchange Shipping Co. v. Dixon (1886) 12 A. C. 11.

[2] When goods are carried on deck contrary to the obligation to carry under deck, they are carried at the risk of the shipowner in case of loss through jettisoning. The Kirkhill, 99 Fed. 575, 39 C. C. A. 658; New Orleans (C. C.) 26 Fed. 44. The bill of lading must be deemed the only contract between the libelant and the ship. The Caledonia, 157 U. S. 124, 15 Sup. Ct. 537, 39 L. Ed. 644; Leduc & Co. v. Ward, 16 Aspinall, Maritime L. C. 290.

[3] When the case was here before, it was directed that no mandate issue until further order of the court and the parties were permitted to take further testimony in this court. 272 Fed. 673. The testimony taken in this court was directed toward the relationship between the shipper and the appellee, and the appellee's ownership of the goods and the lack of knowledge of the shipper of actual deck stowage. This testimony reveals that the shipper and the appellee are two

separate corporations; neither held stock in the other or shares its profits or losses. The merchandise was shipped, the documents forwarded, and the draft paid by the appellee. The shipment was covered by full marine coverage for under deck stowage and this was vitiated by the deck stowage. The testimony satisfactorily establishes the appellee's claim that it lacked knowledge or notice from the ship owner of the actual place of stowage. It therefore cannot be convincingly asserted that there was an assent to deck stowage. In this respect the case differs from Lawrence v. Minturn, 17 How. (58 U. S.) 100, 15 L. Ed. 58. We must therefore consider that the bill of lading is controlling, and should be read as an absolute direction and obligation to load under deck. Here the shipper relied upon such stowage, for it obtained its insurance against deck risks. In Herr v. Tweedie Trading Co., 181 Fed. 483, 104 C. C. A. 231, the question was presented whether there was a merger of the freight contract with the bill of lading. The decision was based upon the ground that there was no conflict between the bill of lading and the contract, and the principal question decided was a conflict between the written and printed clauses in the bill of lading itself. The court decided that all three clauses were in harmony. Such question is not presented on this appeal, and the decision in the Herr Case does not support the claim of the appellant that there was a merger here of the contract and the bill of lading. Whether or not the appellee be charged with knowledge of the negotiations between the broker and ship manager is not important, for the reason that the same negotiations resulted in the freight contract and thereafter the shipowner exercised its election by issuing a clean bill of lading.

[4] The appellee has been awarded a decree for the market value of rosin at Rio de Janeiro on the day on which the vessel reached her destination. This is proper. The cargo was laden on deck contrary to the requirements of the clean bill of lading issued therefor, and by reason thereof the bill of lading and all its clauses were wiped out, and the ship cannot claim the benefits of any limitations therein contained. The Sarnia, supra. To so stow the cargo was a deviation which changed the character of the voyage so essentially that the shipowner who has deviated cannot claim the benefits of the terms of the bill of lading. It vitiates and avoids the contract of carriage. Lawrence v. Minturn, 17 How. (58 U. S.) 100, 15 L. Ed. 58; Constable v. Natl. S. S. Co., 154 U. S. 51, 14 Sup. Ct. 1062, 38 L. Ed. 903; Pacific Coast Co. v. Yukon Co., 155 Fed. 29, 83 C. C. A. 625. The same rule prevails in England. Royal Exchange Shipping Co. v. Dixon, supra. The reason therefor is that the exemption clauses and limitation in the bill of lading are for the benefit of the carrier who has control of the shipments after its delivery to him. By his bill of lading he declares the manner and place of carriage. The shipper, having this notice, understands the reasons attendant upon the character of the transportation, and accepts the limitations and dangers. Freight rates are fixed accordingly. The shipper protects himself accordingly with insurance. When the carrier voluntarily varies from the method or place of carriage contracted for, he leaves the shipper with unknown risks against

which he has not insured and he cannot recover on the insurance which he obtains. The shipowner is in the same position as in the case of deviation in route. Globe Navigation Co. v. Russ Lumber Co. (D. C.) 167 Fed. 228. The limitation of liability being eliminated, the appellant became subject to the general rule of damages, which, in the case of nondelivery, is the market value of the goods, less the landing charges at the time and place the shipment should have arrived. Downing v. Outerbridge, 79 Fed. 931, 25 C. C. A. 244; So. Pac. Ry. Co. v. Reagin, 228 Fed. 14, 142 C. C. A. 470. Since it is stipulated that the market price of the shipment of rosin at Rio de Janeiro on the day the schooner arrived was $40,908.20, the decree for that amount, with interest, was proper.

Decree affirmed.