**JONES et al. v. THE FLYING CLIPPER et al.**

United States District Court
S. D. New York.

Nov. 5, 1953.

Bigham, Englar, Jones & Houston, F. Herbert Prem and Alfred Ogden, New York City, for libelants.

Mendes & Mount, New York City, Wilbur H. Hecht and Russell T. Mount, New York City, of counsel, for claimant-respondent.

Kirlin, Campbell & Keating, New York City, L. DeGrove Potter, Michael

F. Whalen and Walter P. Hickey, New York City, of counsel, for amici curiæ Ocean Carriers.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, John J. Killea, Robert E. Hill and Gregory S. Rivkins, New York City, of counsel, for certain amici curiæ Cargo Interests.

WEINFELD, District Judge.

This case is one of first impression involving the $500 limitation of liability provision, § 1304(5) of the Carriage of Goods by Sea Act,[1] 46 U.S.C.A. §§ 1300–1315 (hereinafter called the "Act").

The facts are stipulated. Libelants sue as endorsees of a bill of lading. On October 8, 1948, the Ford Motor Company delivered to respondent as a common carrier twenty packages containing automobiles and automobile parts for carriage on its vessel, the S. S. Flying Clipper, for delivery at Guam to libelants. Although a clean bill of lading was issued thus obligating the shipowner to stow the packages under deck,[2] the shipment was stowed on the vessel's deck. The respondent concedes that the stowage on deck constituted a "deviation" in law. Eight cases of automobiles were damaged to the extent of $16,794.25. The damage exceeded $500 in respect to each of the eight cases containing automobiles. The causal relation between the deviation and the sea water damage is not in dispute.[3] Notwithstanding the deviation, respondent contends its liability is limited to $500 for each of the damaged cases under § 1304(5) of the Act.

The basic question presented is: Does an unjustifiable deviation by a carrier deprive it of the benefit of the $500 per package limitation of liability contained in § 1304(5) of the Act with respect to cargo damaged by reason of the deviation? I am persuaded that it does.

Claimant-respondent concedes that prior to the passage of the Act a stowage on deck contrary to the contract or custom of underdeck stowage was an unreasonable deviation which displaced the bill of lading and thereby deprived the ship of the benefits of any limitation or exemption contained therein.[4] The underlying rationale of the controlling cases is that an unjustifiable deviation changes the character of the voyage so essentially as to amount to an entirely different venture from that contemplated by the parties. In consequence, it not only vitiates the contract of carriage but also makes the ship or carrier responsible for the cargo as an insurer. Some text-writers prefer the view that since the ship is on a different voyage from that for which the contract was made "the contract has no application to that voyage."[5] The basic rule is

---

1. § 1304(5) reads: "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. * * *"

2. "A clean bill of lading has long been held to designate a stowage under deck, and the issuance of it is an indication by the shipowner of its election to stow under deck." The St. Johns N.F., 2 Cir., 280 F. 553, 555, affirmed sub nom. St. Johns N. F. Shipping Corp. v. S. A. Companhia Geral, etc., 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201.

3. Although some of the amici curiae counsel sought to raise this issue, counsel for the parties to the litigation are in agreement that the sea water damage to the cases occurred while stowed on the deck of the vessel.

4. St. Johns N. F. Shipping Corp. v. S. A. Companhia Geral, etc., 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201, affirming, 2 Cir., 280 F. 553; S. S. Willdomino v. Citro Chemical Co., 272 U.S. 718, 725, 47 S.Ct. 261, 71 L.Ed. 491; The Malcolm Baxter, Jr., 277 U.S. 323, 331, 48 S.Ct. 516, 72 L.Ed. 901; The Sarnia, 2 Cir., 278 F. 459, 463.

5. Griffin, J. W., Address to the Association of Average Adjusters of the Unit-

388

set forth in St. Johns N. F. Shipping Corp. v. S. A. Companhia Geral, etc., 263 U.S. 119, 124, 44 S.Ct. 30, 31, 68 L.Ed. 201, as follows:

"By stowing the goods on deck the vessel broke her contract, exposed them to greater risk than had been agreed and thereby directly caused the loss. She accordingly became liable as for a deviation, cannot escape by reason of the relieving clauses inserted in the bill of lading for her benefit, * * * and must account for the value at destination."

The claimant-respondent urges that the law enunciated in this and other leading authorities has been changed by the Carriage of Goods by Sea Act. In substance, it argues that these cases involved contractual limitation clauses in a bill of lading, not a statutory limit on liability. The conception is that the Brussels Convention—Hague Rules of 1924, the basis of both the British Carriage of Goods by Sea Act, 1924, and the United States Carriage of Goods by Sea Act, 1936, reflected a compromise between cargo interests and carriers—a compromise of rights and liabilities; that the limitation provisions were a part of the compromise; that the valuation limitation is, then, controlling under all circumstances and must be rigidly enforced to carry out congressional intent[6] and the purpose of the signatories to the Convention.

■■ The distinction suggested between contractual and statutory limitation or exemption clauses is more apparent than real. The fundamental character of the bill of lading is not changed by incorporation of the statutory provisions of the Act.[7] The bill of lading is the contract between the shipper and the carrier.[8] It defines the rights, duties, exemptions, and limitations of the parties, whether imposed by statute or the result of voluntary agreement. And when there is such a departure from the contract of carriage as to amount to an unjustifiable deviation, the bill of lading and all its terms go.[9] So, too, the statutory limitation would be vitiated unless the Act specifically keeps it alive.

■ The carrier presses hard that according to the language of § 1304(5) the limitation of $500 per package is applicable "in any event" and thus liability may never be imposed beyond that amount. It suggests that in the give and take which led to the enactment of the Act, maximum liability was fixed and is controlling "in any event" except where the shipper declared the value of the goods and paid an increased freight charge. The purpose of the $500 limitation in § 1304(5) was to prevent a stipulated value for cargo in a lesser amount and to do away with the then current limits imposed by carriers, usually $100 or even a smaller sum.[10]  Ex-

ed States, 1932, cited in Knauth, Ocean Bills of Lading, 1953 Ed., p. 254.

6. An interesting history of events preceding and leading up to the passage of the Acts in England and the United States is set forth in Knauth, Ocean Bills of Lading, 1953 Ed., pp. 115–131.

7. In this case the shipment was from New York to Guam and the bill of lading provided that it was subject to the provisions of the Act. In my view whether so voluntarily incorporated or applicable by reason of the Act itself does not change the result. See 46 U.S.C.A. § 1312.

8. The Caledonia, 157 U.S. 124, 139, 15 S. Ct. 537, 39 L.Ed. 644.

9. The St. Johns N. F., 2 Cir., 280 F. 553, 556.

10. Hearings before the Senate Committee on Commerce on S. 1152, 74th Cong., 1st Sess. (1935), p. 47: "Another beneficial and noteworthy provision of the Hague Rules is the stipulation which makes the carrier liable for loss or damage up to £100 per package, or unit, unless a greater shall have been declared by the shipper and inserted in the bill of lading. This is important when we recall that present limits are usually $100 or $250; in fact, one instance is recorded of a limit of 10 francs."

cept for this change in amount, the provision of the Act did not represent any basic departure from existing law.[11] Neither the Convention nor the Act contains any provision concerning the legal result of an unjustifiable deviation. There is nothing in the history of the Act to indicate that Congress by fixing the limitation at $500 intended to displace the doctrine of unjustifiable deviation which was so firmly entrenched in maritime law. Such a drastic change in the existing law, with its far-reaching consequences in the commercial and financial world would have been expressed in clear and unmistakable terms.

The carrier's argument that the $500 limitation of liability is absolute notwithstanding the unreasonable deviation, overlooks a fundamental reason for the rule. A shipper has the right to assume that the carrier will not deviate and thereby subject the cargo to other than the known risks inherent in a normal route or underdeck stowage. The shipper protects himself by insurance commensurate with such calculated risks. But when the carrier deviates and enters upon "a different venture from that contemplated",[12] he exposes the cargo to unanticipated and additional risks against which he has not protected himself. The shipper, in effect, has been lulled into a false sense of security by the carrier's actions.[13]

Also to be considered, and a matter of no little importance, is the nature of a clean bill of lading and its extensive use in the financial and commercial trade world.[14]

Much of the carrier's argument for preserving "in any event" the limitation of liability rests upon a basic misconception of the nature of its breach in stowing the cargo on deck. It attempts to equate unjustifiable deviation with ordinary breaches of obligations under the Act, such as lack of due diligence to make the vessel seaworthy, or properly and carefully to handle, stow, care for, or deliver her cargo and the like.[15] But mere negligence with regard to stowage or handling of the cargo has never constituted deviation.[16] Deck stowage where underdeck stowage is required is more than negligence—it is a deviation with resulting abrogation of the contract. And in my view it is unnecessary to base the voiding of the contract on the ground that it was the result of the carrier's "gross" violation of its terms; or his "misconduct";[17] or that on deck stowage under a clean bill of lading "would work a fraud";[18] or

---

11. Senator White, one of the leading advocates of the Act, in summarizing its provisions, stated:
    "* * * The legislation supersedes the so-called 'Harter Act' from the time the goods are loaded on the ship to the time they are discharged from the ship. Otherwise our law remains precisely as it is, unaffected and unimpaired by the proposed legislation.
    "Four principal changes in the law will be worked by the legislation:
    "The first one has reference to the limit of liability. Under this provision I should say generally that the limit of liability of the carrier is substantially increased. * * *" 79th Cong.Rec., pt. 12, 74th Cong., 1st Sess., p. 13341.

12. The Chester Valley, 5 Cir., 110 F.2d 592, 594; The Maggie Hammond, 76 U.S. 435, 444, 19 L.Ed. 772.

13. The St. Johns N. F., 2 Cir., 280 F. 553, 556–557.

14. The Kirkhill, 4 Cir., 99 F. 575, 580; The Idefjord, 2 Cir., 114 F.2d 262, 266, certiorari denied, Den Norske Amerikalinje, A/S v. Blumenthal Import. Corp., 311 U.S. 707, 61 S.Ct. 175, 85 L.Ed. 459.

15. See 46 U.S.C.A. § 1303.

16. The Chester Valley, 5 Cir., 110 F.2d 592, 594; Lagerloef Trading Co. v. United States, D.C.S.D.N.Y., 43 F.2d 871; both were cited with approval in Petition of Isbrandtsen Company, Inc. (The Edmund Fanning), 2 Cir., 201 F.2d 281.

17. The Sarnia, 2 Cir., 278 F. 459, 462, 463.

18. The Kirkhill, 4 Cir., 99 F. 575, 578, 579; The Idefjord, 2 Cir., 114 F.2d 262, 266, certiorari denied, Den Norske Amerikalinje, A/S v. Blumenthal Import Corp., 311 U.S. 707, 61 S.Ct. 175, 85 L. Ed. 459.

that the carrier "converted" the cargo.[19] It is sufficient that the carrier's voluntary action in unjustifiably deviating so changed the essence of the agreement as to effect its abrogation.

To uphold the carrier's contention that the limitation of liability is absolute, regardless of a fundamental breach which goes to the very essence of its undertaking, would permit any carrier with recklessness to violate the terms of the bill of lading, knowing that it cannot be called upon to pay more than $500 per package. Such a policy, if upheld, would immunize the carrier against the consequences of its own wilful actions at the expense of an innocent party.[20] In effect, it would result in granting to the carrier exoneration for all damages in excess of $500, even in instances where its conduct in changing the essential nature of the contract caused the damages. There is nothing in the history of the Convention or the Act to warrant such a result. Absent clear congressional purpose, this Court is not prepared to interpret the Act so as to permit the carrier to invoke the defense of valuation limitation in cases of unjustifiable deviation.

Counsel for the cargo and shipping interests acknowledge that no American court has passed upon the precise point at issue in this case. However, the carrier groups stress two decisions [21] involving the effect of deviation upon the one year limitation period within which to commence suit, specified in § 1303(6) of the Act. I do not consider these determinative of the issue presented under § 1304(5) of the Act or controlling precedent, particularly so, since, as counsel point out, a time limitation clause raises other issues. Moreover, Judge Augustus

N. Hand, writing for the Court of Appeals, in a reference to the one year provision contained in the English Carriage of Goods by Sea Act, 1924, which like the United States Act, 1936, was based upon the Brussels Convention—Hague Rules, stated: "Nothing resembling a deviation has been shown to deprive the carrier of the benefit of the limitation".[22]

There are other expressions in later cases, dicta to be sure, as well as the views of authorities, which indicate a view that the doctrine of deviation and its nullification of valuation limitation benefits remained unimpaired by the passage of the Act. In a recent case [23] involving § 1304(5) and a $500 limitation provision, the Court of Appeals for this circuit significantly considered the libelant's contention that there was "a deviation which nullified the limitations contained in the bill of lading." However, it found there had been no deviation— at most an improper stowage.

One English case furnishes support for the proposition that the English Carriage of Goods by Sea Act did not change the substantive law of deviation.[24] The case involved the stranding of the Ixia while on a voyage from an English port to Constantinople. The House of Lords found that the course pursued by the vessel was an unreasonable deviation. The carrier contended that despite the deviation, it was entitled to exemption from liability under a provision of the English Act which granted a carrier immunity from loss or damage arising from perils of the sea. Lord Atkin rejected this contention, stating:

19. The Treganna, Farr v. Hain S. S. Co., 2 Cir., 121 F.2d 940, 1941 AMC 1282.

20. Cf. Higgins v. Anglo-Algerian S.S. Co. 2 Cir., 248 F. 386, 389.

21. Potter v. North German Lloyd, D.C. N.D.Cal., 50 F.Supp. 173; Singer Hosiery Mills of New York v. Cunard White Star, Ltd., 199 Misc. 389, 102 N.Y.S.2d 762.

22. Switzerland General Ins. Co. v. Navigazione Libera Triestina, S.A., 2 Cir., 91 F.2d 960, 963.

23. Petition of Isbrandtsen Company, Inc. (The Edmund Fanning), 2 Cir., 201 F. 2d 281, 286.

24. Stag Line, Ltd. v. Foscolo, Mango & Co. Ltd. (The Ixia), (1932) Appeal Cases 328.

"* * * I find no substance in the contention faintly made by the defendants that an unauthorized deviation would not displace the statutory exceptions contained in the Carriage of Goods by Sea Act. I am satisfied that the general principles of English law are still applicable to the carriage of goods by sea except as modified by the Act; and I can find nothing in the Act which makes its statutory exceptions apply to a voyage which is not the voyage the subject of 'the contract of carriage of goods by sea' to which the Act applies." Stag Line, Ltd. v. Foscolo, Mango & Co. Ltd. (The Ixia), (1932) Appeal Cases 328, p. 340.

Lord Russell of Killowen likewise met this issue head on. He said:

"They [the shipowner] contended that the Act of 1924 freed them from responsibility from loss arising from perils of the sea, notwithstanding any deviation reasonable or unreasonable; in other words that the Act had effected an alteration in the law which had hitherto prevailed. * * *" Id. at p. 346.

"In my opinion the argument is unsound. It was well settled before the Act that an unjustifiable deviation deprived a ship of the protection of exceptions. They only applied to the contract voyage. If it had been the intention of the legislature to make so drastic a change in the law relating to contracts of carriage of goods by sea, the change should and would have been enacted in clear terms." Id. at p. 347.

Leading authorities appear in accord with the foregoing views. Knauth comments:

"Neither the Convention nor any Act passed under the Convention contains any provision concerning the legal result of a deviation. Nor is there any other statute on the subject. Consequently the general law continues to furnish the rule."[25]

Professor Robinson compares the Harter and Carriage of Goods by Sea Acts, 46 U.S.C.A. §§ 190 et seq., 1300–1315, and with respect to deviation and its consequences states:

"Unexcused deviation, so far as the Harter Act is concerned, deprives the vessel of the protection of the statute and makes it liable 'as an insurer'. The Carriage of Goods by Sea Act is no doubt to be interpreted the same way as the Harter Act."[26]

I have considered all the contentions advanced by the parties. I do not find that they require a different determination than that reached.

 I conclude that the unreasonable deviation by the claimant-respondent deprives it of the benefit of the $500 per package limitation contained in § 1304 (5) of the Act and that libelants are entitled to recover their full losses.

Decree to enter accordingly.

---

25. Knauth, Ocean Bills of Lading, 1953 Ed., p. 241.

26. Robinson on Admiralty, 1939 Ed., § 75, p. 533.