AMERICAN & FAR EASTERN TRADING COMPANY, a corporation, Plaintiff,

v.

SEA–LAND SERVICE, INC., a corporation, Defendant.

No. C–79–3704–WWS.

United States District Court, N. D. California.

July 8, 1980.

John E. Droeger, Hall, Henry, Oliver & McReavy, San Francisco, Cal., for plaintiff.

Francis L. Tetreault, Graham & James, San Francisco, Cal., for defendant.

WILLIAM W SCHWARZER, District Judge.

The issue before the Court is whether palletized loads which have been "Shrink Packed," or the individual cardboard cartons making up those loads, are "packages" within the meaning of the package limitation of the Carriage of Goods by Sea Act (COGSA). 46 U.S.C. § 1304(5).[1]

The case is before the Court on cross-motions for summary judgment. The material facts are set forth in the parties' agreed statement. Plaintiff makes commercial shipments of cosmetics to its customers in Korea, utilizing the berth line service of defendant, an ocean common carrier. Prior to 1977, plaintiff shipped its products in individual cardboard cartons identical to those utilized in the shipments involved in this action.

Beginning in 1977, plaintiff made arrangements with an independent contractor for Shrink Packing its shipments. In this process, cardboard boxes are placed on pallets and the entire load is covered with a 6 mil. polyethylene bag. The load is then passed through a tunnel in which the polyethylene bag is heated, causing it to shrink into a tight wrapping around the boxes and pallet. The polyethylene bag is transparent; the individual cartons and their markings on the exposed sides are clearly visible under the wrapping. The Shrink Pack process serves as a substitute for steel strapping palletized loads. On occasion nylon-reinforced tape with pressure sensitive adhesive backing is wrapped around the boxes before they are covered with the bag; it is not known whether the shipments at issue were taped.

The shipments were Shrink Packed at plaintiff's direction and were then delivered to the defendant for loading and carriage. Unlike those in earlier non-Shrink Packed shipments, the cartons here were not marked with shipping information but showed only the purchase order number and in some cases the brand name of the contents. Each load carried a placard placed under and visible through the polyethylene bag identifying the consignee and shipment.

Since the enactment of COGSA in 1936, technological advances in cargo handling not contemplated by Congress at the time have repeatedly confronted the courts with difficult questions in the application of the package limitation.[2] Most of the litigation has concerned the question whether the container or the separate items stowed in the container should constitute the package for purposes of the COGSA limitation. See, e. g., Leather's Best, Inc. v. SS Mormaclynx, 451 F.2d 800 (2d Cir. 1971); Matsushita Electric Corp. v. S.S. Aegis Spirit, 414 F.Supp. 894 (W.D.Wash.1976).

The technological and commercial differences between containers and palletized loads render the container cases of limited relevance to the disposition of this case.[3] In this circuit, the effect of the COGSA limitation on palletized loads was addressed, albeit somewhat tangentially, in Hartford Fire Insurance Co. v. Pacific Far East Line,

---

1. Section 1304(5) provides:

   Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

2. See Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 814 (2d Cir. 1971).

3. Containers have been considered by courts to be "detachable stowage compartments of the ship." Matsushita Elec. Corp. v. S. S. Aegis Spirit, 414 F.Supp. 894, 907 (W.D.Wash.1976); Leather's Best, Inc. v. S. S. Mormaclynx, supra, 451 F.2d at 815. Containers, unlike pallets, may be filled with cargo which, were it not for the container, could not move at all unpackaged, such as furniture. See Rosenbruch v. American Export Isbrandtsen Lines, Inc., 543 F.2d 967 (2d Cir.), cert. denied, 429 U.S. 939, 97 S.Ct. 353, 50 L.Ed.2d 308 (1976). And a container has a much greater cargo capacity than a pallet.

*Inc.*, 491 F.2d 960 (9th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974), holding that an electrical transformer did not become a COGSA "package" simply by being attached to a wooden skid or pallet. The court reasoned that it was not the purpose of the act to relieve the carrier of its normal responsibility for damage to cargo or to limit unduly its liability for just claims when goods have not been shipped in packages; it further assumed that Congress intended the word "package" to be given its "plain, ordinary meaning." 491 F.2d at 963. The court rejected the subjective purpose of the shipping configuration as a criterion, but indicated instead that cargo is shipped in a "package" when "the mode of packaging conceals the identity of the goods being shipped." 491 F.2d at 964.

Only four reported decisions deal directly with the issue before this Court. In *Standard Electrica, S.A. v. Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft*, 375 F.2d 943 (2d Cir.), *cert. denied*, 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89 (1967), the majority of the panel held that a pallet to which were strapped six cartons containing TV tuners was a "package," although there was no complete outer cover or wrapping. The court relied on the following factors: (1) that the shipping documents listed the number of pallets as the number of packages; (2) that the parties in correspondence referred to the pallets as packages; (3) that the shipper chose to palletize for its convenience; and (4) that the shipper had the option of declaring the nature and value of the goods to escape the limitation. This case was subsequently distinguished by the Second Circuit as resting on lack of notice to the carrier and agreement by the parties that the pallets were packages. *Leather's Best, Inc. v. S. S. Mormaclynx, supra*, 451 F.2d at 815.

In *Omark Industries, Inc. v. Associated Container Transportation (Australia), Ltd.*, 420 F.Supp. 139 (D.Or.1976), Judge Beeks held that a palletized unit of cartons of tools constituted a "package." The court relied on the following factors:

(1) the shipper prepared the palletized units; and

(2) each unit was enclosed by heavy doubled-wall corrugated cardboard concealing the cartons within.

The court applied to the case before it the general principle that a COGSA package is the largest individual unit of packaged cargo made up by the shipper and entrusted to the carrier. It treated the outer packaging material as an integral part of the shipment; if the shipper opts for such large packages to achieve greater protection, the court reasoned, it must settle for less protection under COGSA.

Similar reasoning and the same result are found in *Menley & James Laboratories Ltd. v. M/V Hellenic Splendor*, 433 F.Supp. 252 (S.D.N.Y.1977). That action involved 163 cartons of cosmetics shipped on 9 pallets; the opinion does not disclose whether the cartons were covered by exterior packaging. The court held the "packages" to be the pallets, relying on these factors:

(1) the decision to palletize was the shipper's;

(2) the shipping documents referred to 9 pieces although they also disclosed that they contained 163 cartons;

(3) there was no evidence that the cartons themselves were suitable for shipment.

The opposite result was reached in *Allied International American Eagle Trading Corp. v. S. S. Export Bay*, 468 F.Supp. 1233 (S.D.N.Y.1979). The claim there was based on the loss of 18 kegs of steel fasteners strapped to two pallets of nine kegs each. In finding each keg to be a "package," the court cited these factors:

(1) the kegs themselves were suitable shipping containers and a portion of the shipment in fact moved unpalletized;

(2) the shipping documents listed each keg as a package;

(3) the separate kegs in each pallet were clearly visible.

The Court recognizes that the question is a close one. In light of prior decisions, a ruling for either plaintiff or defendant

would be defensible. It is a question, moreover, which implicates no persuasive policy considerations. Both the carrier and the shipper are perfectly capable of protecting themselves against loss and no doubt have done so through insurance. The ambiguities which lead to this kind of litigation are of the parties' own making—the shipper's for failing to declare the nature and value of the goods, thereby avoiding additional charges—the carrier's for failing to insist, as a precondition to carriage, that the shipper supply it with a package count and show it on the bill of lading.[4] Presumably a business judgment has been made that it is more economical to accept the ambiguities and, in the event of loss, to gamble, or let the insurance carriers gamble on the outcome of the litigation. Until Congress amends COGSA, however, as it should to bring it into step with the times,[5] that situation will persist, requiring the courts to balance the relevant factors on each side.

The Court concludes, on the basis of the factors listed below, that this case is distinguishable from each of the foregoing cases holding the pallet to be the package in at least one material respect:

(1) Character of the shipment. The cartons constituting the pallet load were themselves, as in *S.S. Export Bay, supra*, suitable shipping containers; the parties stipulated that prior to using the Shrink Pack, plaintiff had shipped its goods in identical cartons, albeit stowed in containers.

(2) Manner of palletizing. The polyethylene bag which covered the cartons served less as additional packaging, as the corrugated cardboard in *Omark, supra*, than as a substitute for steel strapping conventionally used to attach cargo to pallets.

(3) Notice to the carrier. The carrier had notice of the character and composition of each pallet load, first, because the polyethylene covering was transparent, and, second, because the shipping documents, although ambiguous, disclosed that each pallet contained 300 cases.[6]

(4) Benefit to the parties. The decision to use the Shrink Pack was the shipper's, but the parties have stipulated that it benefitted the carrier and consignee as well.[7]

In addition, the reasoning in *Hartford, supra*, helps to tip the scales in plaintiff's favor:

(1) the cartons making up the palletized loads are clearly "packages" according to the word's plain, ordinary meaning;

(2) cartons which are otherwise "packages" do not necessarily cease to be packages when attached to a pallet.

For these reasons, the Court finds and concludes that plaintiff is entitled to judgment. According to the stipulation of the parties, judgment will be entered for plaintiff in the amount of $21,238, with prejudgment interest from December 12, 1979, and costs of suit.

IT IS SO ORDERED.

4. *See* note 6, *infra*.

5. *See* note 2, *supra*.

6. *See Hartford Fire Insurance Co. v. Pacific Far East Line, Inc.*, 491 F.2d 960, 964 (9th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974); *Complaint of Norfolk, Baltimore & Carolina Line, Inc.*, 478 F.Supp. 383, 392–93 (E.D.Va.1979); *Omark Industries, Inc. v. Associated Container Transportation (Australia), Ltd.*, 420 F.Supp. 139, 142 (D.Ore.1976); *Commonwealth Petrochemicals, Inc. v. S/S Puerto Rico*, 455 F.Supp. 310, 320 (D.Md.1978), *rev'd on other grounds*, 607 F.2d 322 (4th Cir. 1979). On the question whether shipping documents are a relevant criterion, compare, Judge Beeks's opinions in *Omark, supra*, 420 F.Supp. at 143 (no effect can be given to parties' characterizations in shipping documents) and *Matsushita Elec. Corp. v. S. S. Aegis Spirit, supra*, 414 F.Supp. at 908 (carrier can protect itself by requiring shipper to supply, as a precondition to carriage, a package count in the bill of lading). *See also Standard Electrica, S.A. v. Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft*, 375 F.2d 943, 946 (2d Cir. 1967) (the parties' characterization of the shipment is relevant unless repugnant to the Act).

7. *See Leather's Best, Inc. v. S. S. Mormaclynx, supra*, 451 F.2d at 815–16 n.19. *Cf. Hartford Fire Insurance Co. v. Pacific Far East Line, Inc., supra*, 491 F.2d at 965.