694 F.2d 609
 67 A.L.R.Fed. 254
 Stephen NEMETH, Plaintiff-Appellant,
v.
GENERAL STEAMSHIP CORPORATION, LTD., a corporation
(Canadian), Westfal-Larsen Line, a corporation,
and M/S Villanger, her engines, tackle,
apparel, furniture and
fixtures,
Defendants-
Appellees.
 No. 81-5186.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 5, 1982.
Decided Dec. 10, 1982.
 
 Stephen Nemeth, in pro. per.
 David E.R. Woolley, Lillick, McHose & Charles, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before HUG, TANG and PREGERSON, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 Stephen Nemeth brought this action in admiralty against Westfal-Larsen Line, General Steamship Corporation, Ltd., and the M/S VILLANGER to recover for losses incurred during the transport of three crates of household goods shipped from Buenos Aires, Argentina to Los Angeles, California. Nemeth sought $22,000 in damages. The district court granted partial summary judgment limiting the appellees' (defendants) liability to $1,000 pursuant to Section 4(5) of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. Sec. 1304(5), which limits liability to $500 per package unless the nature and value of the goods have been declared and inserted in the bill of lading. The appellees offered judgment in the amount of $1,000 plus interest and costs and judgment was entered accordingly. Nemeth contends that the liability limitation of section 4(5) does not apply, or that, if it does apply, his shipment consisted of more than three packages. We reverse the judgment because there are genuine issues of material fact as to whether section 4(5) applies.
 
 
 2
 * Background and Facts
 
 
 3
 Nemeth, the owner and shipper of the damaged goods, seeks to recover from Westfal-Larsen, the ocean carrier, General Steamship, the agent of Westfal-Larsen, and the M/S VILLANGER, the vessel.
 
 
 4
 Nemeth contracted with Aeromar Van Lines ("Aeromar"), a freight forwarder/shipper to handle the shipment of his household goods, personal effects, and work tools from Buenos Aires to Los Angeles. In preparation for shipment, Nemeth wrapped his belongings in individual parcels for packaging. Aeromar, on behalf of Nemeth, handled the remaining details of the shipment. At its warehouse, Aeromar packaged Nemeth's parcels in three large wooden shipping crates. Aeromar sealed the crates, delivered them to the Port of Buenos Aires, and after open inspection according to Argentine customs and shipping regulations, loaded the crates aboard the M/S VILLANGER.
 
 
 5
 Nemeth contends that he gave the appellees a list which detailed the contents of his shipment and notified them of the shipment's value, which was in excess of $20,000. Aeromar and Westfal-Larsen signed a bill of lading that listed Nemeth's goods as "3 (three) cases household goods." A value declaration of $400 was typed on the face of the bill of lading. Nemeth claims that this value declaration was added later by the carrier, without his knowledge or consent.
 
 
 6
 When his shipment was delivered to the Port of Los Angeles, Nemeth found that two of the crates had been broken open. Several of the inner parcels were damaged or missing. Nemeth noted the damages on the delivery record and took possession of his goods.
 
 
 7
 Invoking the maritime and admiralty jurisdiction of the district court, Nemeth filed suit seeking $22,000, the alleged value of his goods that had been lost or damaged during the voyage. The appellees moved for partial summary judgment contending that their liability, if any, was limited to $500 per package pursuant to Section 4(5) of COGSA. That statute provides in pertinent part:
 
 
 8
 Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading....
 
 
 9
 46 U.S.C. Sec. 1304(5).
 
 
 10
 The district court found that there was no genuine issue as to any material fact relating to the limitation of liability and granted partial summary judgment limiting Nemeth's recoverable damages to $500 per package, for a total of $1,000 plus interest and costs. Thereafter, appellees made an offer of judgment for that amount. The judgment was entered and Nemeth appeals.
 
 II
 
 11
 Fair Opportunity to Choose Higher Liability
 
 
 12
 It is the law of this circuit that a carrier may limit its liability under Section 4(5) of COGSA only if the shipper is given a "fair opportunity" to opt for a higher liability by paying a correspondingly greater charge. Komatsu, Ltd. v. States Steamship Co., 674 F.2d 806, 809 (9th Cir.1982); Pan American World Airways, Inc. v. California Stevedore and Ballast Co., 559 F.2d 1173, 1176 (9th Cir.1977). The district court granted the appellees' motion for partial summary judgment limiting liability to $500 per package under Section 4(5) of COGSA. This ruling assumes that Nemeth had a fair opportunity to choose a higher liability; otherwise, section 4(5)'s liability limitations would not apply. We believe that there is a material issue of fact as to whether Nemeth had a fair opportunity to so choose.
 
 
 13
 The carrier bears the initial burden of proving "fair opportunity." Komatsu, 674 F.2d at 809. Normally, the carrier can meet this initial burden by showing that the language of COGSA Section 4(5) is contained in the bill of lading. Id. Such an express recitation of section 4(5) is prima facie evidence that the shipper was given a fair opportunity to choose a higher liability. Tessler Brothers (B.C.) Ltd. v. Italpacific Line, 494 F.2d 438, 443 (9th Cir.1974). The burden of disproving "fair opportunity" is then shifted to the shipper.
 
 
 14
 Clause 7 of the bill of lading does recite the language of COGSA Section 4(5). This provision in the bill of lading is, however, accurately described by Nemeth as microscopic and blurry. The copy in the record before the district court and this court is illegible to the unaided eye. It cannot be deciphered without resort to a magnifying glass or a preexisting knowledge of section 4(5).
 
 
 15
 A legible recitation of COGSA Section 4(5) in the bill of lading is evidence that the shipper had notice of a choice of liabilities and rates. See Tessler, 494 F.2d at 443. An illegible recitation of section 4(5), however, does not impart such notice, and thus is not prima facie evidence of "fair opportunity." The inclusion of the language of section 4(5) in the bill of lading was, on this record, not sufficient to meet the appellees' initial burden of proving "fair opportunity."
 
 
 16
 Even if the appellees had met their initial burden, Nemeth's response was sufficient to create a genuine issue of material fact and overcome the summary judgment motion. Nemeth claims that he gave the appellees a detailed list of the contents of his shipment and notification of its value, which was substantially in excess of COGSA's $500-per-package limitation. This can be interpreted as evidence of an attempt to declare a higher valuation than the COGSA limit or as evidence that Nemeth would have opted for a higher liability had he been given a fair opportunity to do so.
 
 
 17
 Also relevant to the inquiry of whether there was a fair opportunity to choose between a higher or lower liability is the fact that the bill of lading contains no designated place for an excess value declaration. Pan American World Airways, 559 F.2d at 1175. Further, Nemeth claims that the $400 valuation typed on the bill of lading was put there without his knowledge or consent.
 
 
 18
 We hold that there is a genuine issue of fact as to whether Nemeth was given a fair opportunity to choose a higher liability and pay a correspondingly greater charge. The partial summary judgment limiting appellees' liability to $500 per package is therefore in error.
 
 III
 Deviation
 
 19
 Nemeth contends that there was an unreasonable deviation from the shipping contract because his goods were not properly stowed under the deck as required by the bill of lading. He argues that this deviation from the contract of carriage deprives the appellees of COGSA Section 4(5)'s liability limitation, and that this is another reason for reversing the district court's determination that appellees' liability is limited by section 4(5). Resolution of this issue depends upon whether an unreasonable deviation from the contract of carriage deprives the carrier of section 4(5)'s protection, a matter of first impression in this circuit.
 
 
 20
 Prior to the enactment of COGSA, an unreasonable deviation from the contract of carriage deprived the carrier of the benefit of liability limitations. St. Johns N.F. Shipping Corp. v. S.A. Companhia Geral Commercial do Rio de Janeiro, 263 U.S. 119, 124, 44 S.Ct. 30, 31, 65 L.Ed. 201 (1923); 2A Benedict on Admiralty Sec. 128, p. 12-30 (7th ed. 1981). An unreasonable deviation was viewed as vitiating the contract of carriage and making the carrier responsible for the cargo as an insurer. See Jones v. The Flying Clipper, 116 F.Supp. 386, 387 (S.D.N.Y.1953).
 
 
 21
 Since the passage of COGSA, American courts have split over whether the "unreasonable deviation" rule survived COGSA's enactment. The Second Circuit holds that COGSA was not intended to change the existing law on this point, and that an unreasonable deviation from the contract of carriage deprives the carrier of the benefit of section 4(5)'s liability limitation. Du Pont de Nemours International S.A. v. S.S. Mormacvega, 493 F.2d 97, 100 n. 9 (2nd Cir.1974). The Seventh Circuit, on the other hand, has concluded that Congress did intend section 4(5) to change the existing law on unreasonable deviation, and that the liability limitation applies regardless of whether there has been an unreasonable deviation. Atlantic Mutual Insurance Co. v. Poseidon Schiffahrt, 313 F.2d 872, 875 (7th Cir.), cert. denied, 375 U.S. 819, 84 S.Ct. 56, 11 L.Ed.2d 53 (1963).
 
 
 22
 The Second Circuit's position, that COGSA did not change the existing law on unreasonable deviation, finds support in British law. The Law Lords have unanimously held that the British Carriage of Goods by Sea Act, which, like COGSA, is based on the Brussels Convention--Hague Rules of 1924 and contains the same provisions as COGSA relating to deviation and carriers' exemptions, did not change the existing rule that an unreasonable deviation deprives the carrier of the protection of liability limitations. Stag Line, Ltd. v. Foscolo, Mango and Co., Ltd. (The Ixia), 1932 A.C. 328.
 
 
 23
 We are persuaded that the position of the Second Circuit and the British Law Lords is correct. There are several reasons for this.
 
 
 24
 The theory behind depriving the carrier of the protection of liability limitations when it unreasonably deviates is that a deviation subjects the cargo to risks the shipper did not anticipate. "A shipper has the right to assume that the carrier will not deviate and thereby subject the cargo to other than the known risks inherent in a normal route or underdeck stowage." Jones v. The Flying Clipper, 116 F.Supp. at 389. Mere negligence in the stowage or handling of cargo, which might be considered an inherent risk of shipping, is not a deviation. See The Chester Valley, 110 F.2d 592, 594 (5th Cir.1940). A deviation is a "serious departure from the contract of carriage," id., exposing the cargo to "unanticipated and additional risks." Jones, 116 F.Supp. at 389.
 
 
 25
 There is nothing in COGSA to indicate that shippers should anticipate the additional risks associated with unreasonable deviations. Indeed, in deciding whether to be bound by the liability limitation in COGSA Section 4(5) or pay for higher liability, a shipper is entitled to assume that his goods will not be subjected to such additional risks. The rationale behind the unreasonable deviation rule is sound, and has not been undermined by the enactment of COGSA.
 
 
 26
 To hold that section 4(5)'s liability limitation is absolute, regardless of the carrier's actions, would permit a carrier to violate the terms of the bill of lading at will, knowing that its liability will be limited to $500 per package. The carrier would be immunized even from the consequences of a fundamental breach going to the essence of the contract. There is nothing in COGSA or its history to warrant such a result. See Jones, 116 F.Supp. at 390.
 
 
 27
 The subsection which immediately precedes section 4(5), COGSA Section 4(4), 46 U.S.C. Sec. 1304(4), seems to assume that the unreasonable deviation rule survives. That subsection provides that "any reasonable deviation shall not be deemed to be an infringement or breach of this Act ...." As this language "is pregnant with the positive meaning that an unreasonable deviation is 'an infringement and breach of this act,' it seems logical, as was held in the House of Lords in The Ixia [supra], that when a departure from the contractual voyage is an unreasonable deviation, the carrier is not entitled to any of the exemptions or limitations provided by that Act." 2A Benedict on Admiralty Sec. 128, p. 12-32 (7th ed. 1981). In other words, section 4(4) implies that an unreasonable deviation is a breach by the carrier of COGSA, thereby depriving the carrier of COGSA's protection.
 
 
 28
 We hold that an unreasonable deviation from the contract of carriage deprives the carrier of the protection afforded by COGSA Section 4(5). Nemeth was not given an opportunity in the district court to prove unreasonable deviation. This was error.
 
 IV
 Number of Packages
 
 29
 Nemeth contends that the district court incorrectly determined that his shipment consisted of only three packages for the purpose of applying the $500 per package liability limitation in COGSA Section 4(5). Nemeth argues that each individually wrapped inner parcel constituted a package. Although this issue will be moot if, on remand, the district court determines that the appellees' liability is not limited by section 4(5), we think it advisable for reasons of judicial economy to address this issue since the district court might again find section 4(5) applicable.
 
 
 30
 The bill of lading clearly reflected a shipment of three packages. It is undisputed that the inner parcels were packaged in three wooden crates by Nemeth's agent with Nemeth's express agreement. Nemeth raises no genuine issue of fact as to these matters. The district court correctly found that Nemeth's shipment consisted of three packages. See Hartford Fire Ins. Co. v. Pacific Far East Line, Inc., 491 F.2d 960, 964 (9th Cir.), cert. denied, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974); see also American & Far E. Trading v. Sea-Land Serv., 678 F.2d 830 (9th Cir.1982) (affirming the trial court for reasons stated in opinion below, 493 F.Supp. 125 (N.D.Cal.1980)).
 
 V
 Requests for Admission
 
 31
 The record indicates that Nemeth served requests for admission on appellees, to which there were no responses. Federal Rule of Civil Procedure 36(a) provides that if there is no answer or objection to a request for admission within thirty days after service of the request, the matter is deemed admitted. On remand, the district court must consider the effect of Nemeth's requests for admission. See Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir.1981).
 
 VI
 Conclusion
 
 32
 Whether appellees' liability is limited by Section 4(5) of COGSA depends upon whether Nemeth was given a fair opportunity to choose a higher liability and whether there was an unreasonable deviation. Because issues of fact remain as to both of these matters, we reverse the judgment of the district court and remand for further proceedings.
 
 
 33
 REVERSED and REMANDED.