YUTANA BARGE LINES, INC., and
Lawrence G. Shelver, Plaintiffs,

v.

NORTHLAND SERVICES,
INC., Defendant.

No. C81–1407B.

United States District Court,
W.D. Washington.

Nov. 20, 1983.

Robert A. Green of Detels, Madden, Crockett & McGee, Seattle, Wash., for plaintiffs.

Thomas G. Johnson of Bauer, Moynihan & Johnson, Seattle, Wash., for defendant.

## MEMORANDUM OF DECISION

BEEKS, Senior District Judge.

Plaintiff Yutana Barge Lines (Yutana) is an Alaska corporation which maintains an office and does business in the State of Washington and plaintiff Shelver is its president. Defendant Northland Corporation is a Washington corporation engaged in the business of water transportation of cargo between Seattle, Washington and various ports in Alaska. On October 14, 1980, defendant accepted Yutana's 25-foot vessel, in apparent good order and condition, for carriage from St. Michael, Alaska to Seattle, Washington. Defendant provided insurance on said cargo in accordance with its open marine cargo insurance policy, Policy No. DER & W 2871. Said vessel, secured to a wooden platform, was stowed on the deck of Barge DT 160. Tug TAURUS towed DT 160 with Barge TAZLINA in tandem tow southbound from St. Michael. Barge DT 160 was the smaller of the two barges and it was defendant's practice in tandem tow to place the smallest barge first in the tow. On or about November 15, 1980, near Yakutat, in the Gulf of Alaska, the tug and tow encountered a severe storm, which is common to the area during the period of time involved. The master of TAURUS cut said barges adrift whereupon DT 160 capsized resulting in the total loss of the vessel being transported.

Plaintiffs bring this action to recover the value of the lost cargo. Trial, limited to the issue of liability, was held on September 27, 1983.

## CONTRACT OF AFFREIGHTMENT

Defendant did not issue a Bill of Lading when the cargo was received for shipment. Instead, defendant accepted said cargo for shipment and later, after commencement of the voyage, issued a document labeled "Bill of Lading" which did not contain the conditions of carriage customarily found on the reverse side. Defendant contends that because (1) its tariff, of which plaintiffs were recipients, sets forth the terms of the bill of lading which was properly filed with the Federal Maritime Commission, and (2) since the parties have conducted substantial business with each other in the past, plaintiffs should be bound by the terms and conditions of said tariff and bill of lading. For the reasons below stated, the court need not decide the controlling terms and conditions. Suffice to say that there was a contract providing for the transportation of plaintiffs' cargo from St. Michael to Seattle in the same apparent good order and condition as when received.

## BREACH OF CONTRACT

■ Plaintiff knew that the cargo was to be stowed on the deck of a barge and that the barge was to be towed to destination, but plaintiff did not consent by bill of lading or otherwise to transportation by tandem tow. It is well recognized that a tandem tow is far more dangerous than a single tow because of the increased risk of loss or damage to cargo.[1] *See, Tugs, Towboats, and Towing*, 166–68 (1967), by Edward M. Brady, an eminent authority on

---

1. The general weather conditions in the Gulf of Alaska indicate the inexpediency of tandem tows. The Gulf of Alaska, with its rim of coastal mountain ranges, catches the frequent storms that move in from the southwest. Winds of fifty to sixty knots are not unusual and may occur in any month of the year. Williwaws are especially dangerous winds which are known to be sudden, violent, and unpredictable and frequently occur in the area involved. *See In re New England Fish Co.*, 465 F.Supp. 1003, 1007 n. 4 (W.D.Wash.1979); 9 United States Coastal Pilot, published by the United States Coast Guard.

towage. Such an increase of risk constitutes an unreasonable deviation. *See generally, St. Johns N.F. Shipping Corp. v. S.A. Companhia*, 263 U.S. 119, 44 S.Ct. 30, 65 L.Ed. 201 (1923); *Nemeth v. General S.S. Corp.*, 694 F.2d 609 (9th Cir.1982). In connection with its operations as a common carrier, defendant confirms this conclusion by fixing its own standard of carriage in an open marine cargo insurance policy which defendant arranged with a group of marine underwriters which enabled defendant to insure shippers against marine risks. This policy contained a specific warranty of transportation only by single tow in the Gulf of Alaska beyond Cape Spencer between October 15 and April 1 annually. Defendant contends that said warranty applies only to northbound shipments. The court, however disagrees that the warranty is so limited and the court construes the warranty to mean in the Gulf of Alaska irrespective of direction. It is significant that the published tariff rates are the same for both northbound and southbound shipments. In any event, defendant, by agreeing to a warranty of single tow transportation, implicitly recognized the increase of risk of loss or damage to cargo transported by tandem tow.

It has long been held that a common carrier by water is required to stow cargo underdeck, and unless the shipper agrees prior to the commencement of the voyage, the carrier may not stow otherwise even though the bill of lading makes the place of stowage optional with the carrier. *St. Johns N.F. Shipping Corp. v. S.A. Companhia*, 263 U.S. 119, 124–25, 44 S.Ct. 30, 31, 65 L.Ed. 201 (1923); *Jones v. Flying Clipper*, 116 F.Supp. 386, 389–91 (S.D.N.Y.

1953). In *St. Johns*, the Supreme Court held that, absent an express contract providing for on deck stowage, a clean bill of lading amounts to a positive representation that the goods would receive underdeck stowage. The court reasoned that stowage on deck exposes the cargo to greater risks than the shipper had bargained for, and that the increased risk of loss or damage resulting from such on deck stowage was an unreasonable deviation which made the carrier an insurer. *Id.*

*St. Johns* and *Nemeth* illustrate the principle that an increase of risk of loss or damage to cargo, without the knowledge and consent of the shipper, constitutes an unreasonable deviation. It is apparent that transporting cargo by tandem tow substantially increases the risks of loss or damage to said cargo. Such an increase of risk is an unreasonable deviation which creates an insurer's liability on part of the carrier for resulting loss or damage. Furthermore an unreasonable deviation deprives the carrier of the protection of both contractual and statutory liability limitations. *Nemeth v. General S.S. Corp.*, 694 F.2d 609, 612–13 (9th Cir.1982). The theory behind depriving the carrier of the protection of liability limitations is that a deviation subjects the cargo to risks the shipper did not anticipate. *Id.* The shipper had the right to assume that the carrier would not deviate and thereby subject the cargo to other than the known risks inherent in a single tow. Since such an unreasonable deviation deprives the carrier of contractual and statutory limitations of liability, the court holds that defendant may not rely upon its (1) time-bar,[2] (2) package/customary freight

---

**2.** All claims for shortage of entire shipments shall be waived and no suit shall be maintained to recover therefor unless instituted within two (2) years after the day of arrival of the vessel at port of discharge named herein, or in case of her nonarrival, within six (6) months from the day of her scheduled arrival at said port. No suit or proceeding to recover for or upon any claim or demand shall be maintained against the Carrier or vessel, or owner thereof, unless commenced within six (6) months after delivery of the goods to the Carrier, and the lapse of such period shall be deemed a complete bar to

recovery in any suit or proceeding not sooner commenced.... Defendant's Tariff No. 20, Rule 7, ¶ 20.

Defendant also contends that plaintiffs' claims are barred by the doctrine of laches. Laches consists of two elements: inexcusable delay in commencing the action and prejudice resulting to the other party from such delay. *Sea Quest Marine, Inc. v. Cove Shipping, Inc.*, 474 F.Supp. 164, 167 (W.D.Wash.1979). Inasmuch as defendant has not introduced any evidence of prejudice, and the court finds that any delay in commencing the action was not unreasonable

unit limitation,[3] and peril of the sea[4] defenses. Furthermore, by such deviation, defendant, with full knowledge of the single tow warranty, not only made itself an insurer, but also voided the insurance policy it arranged for plaintiff.

### BENEFIT OF INSURANCE

 Defendant also contends that it is entitled to the benefit of plaintiffs' insurance pursuant to Tariff No. 20, Rule No. 7, ¶ 18, entitled "Benefit of Insurance."[5] It is undisputed that Shelver entered into a loan and trust receipt with the Insurance Company of North America for $16,825.20. It has long been recognized that a loan receipt based upon a payment equal to the amount of the loss does not affect the right of the assured to sue as the proper party in interest. *Luckenbach v. McCahar Sugar Refining Co.*, 248 U.S. 139, 148, 39 S.Ct. 53, 55, 63 L.Ed. 170 (1918). Accordingly, the court holds that defendant's benefit of insurance provision is inapplicable.

 Defendant contends that it is entitled, by virtue of Tariff No. 20, Rule No. 7, ¶ 7,[6] to offset the freight due for the shipment in question against any recovery of plaintiffs. The court holds that the carrier's right to the recovery of freight was forfeited by its unreasonable deviation. Finally, defendant's contention that its underwriters on its Open Marine Cargo Policy are necessary parties to this action is also without merit.

If the parties cannot agree on the amount of damages prior to December 16, 1983, the court will set the matter down for hearing.

This Memorandum of Decision shall constitute the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

---

or inexcusable, defendant's contention that plaintiffs' claim is barred by laches is rejected.

3. In case of any loss or damage to, or in connection with, goods exceeding in actual value $500 lawful money of the United States, per package or, in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500 per package or per unit.... Defendant's Tariff No. 20, Rule 7, ¶ 19.

4. 46 U.S.C. § 192 (Harter Act)

5. In case of any loss and/or damage for which the Carrier shall be liable, the Carrier shall, to the extent of such liability, have the full benefit of any insurance that may have been effected upon the goods or against said loss or damage, and as will also of any payment to insured by underwriters repayable only out of recovery against Carrier, notwithstanding the underwriters are not obligated to make such payment.

6. Full freight to destination, whether intended to be prepaid or collect at destination, and all advance charges are due and payable to the Carrier upon receipt of the goods by the latter and shall be deemed fully and irrevocably earned, vessels or goods lost or not lost at any stage of the entire transit, or if there shall be a forced interruption or abandonment of the voyage at a port of distress or elsewhere....