**BARRETT MOVING & STORAGE COMPANY, Plaintiff,**

v.

**ALL STATES AIR CARGO, INC.; Prairie Express, Inc.; Joyce Bros. Moving & Storage Co., d/b/a All–Types Forwarding & Cartage; Transx. Ltd., d/b/a Skyway Airfreight; and Smyth Moving Service, Inc., Defendants.**

**No. 91 C 1218.**

United States District Court, N.D. Illinois, E.D.

April 14, 1993.

Robert Joseph Kopka, Michael Kevin Sie-
benhaar, Landau, Omahana & Kopka, Chica-
go, IL, for plaintiff.

David T. Rallo, Frank F. Tully, Jr., Rallo
& Tepper, Jeffrey Scott Johnston, Katz,
Randall & Weinberg, Chicago, IL, for All
States Air Cargo.

Scott W. Hoyne, Terry A. Takash, Johnson
& Bell, Ltd., Chicago, IL, for Prairie Exp.,
Inc.

Richard M. Clark, Colleen M. Reppen,
McKenna, Storer, Rowe, White & Farrug,
Chicago, IL, for Joyce Bros. Moving & Stor-
age Co.

James Patrick McCarthy, Scott Rosengar-
den, Susan Gunty, Gunty and McCarthy, Chi-
cago, IL, for Smyth Moving Service, Inc.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

This ongoing saga concerns a shipment of computer equipment from Illinois to Alaska. It arrived in damaged condition and that damage resulted, apparently, in an $80,000 settlement of a claim by the Illinois owner against plaintiff. Perhaps there is something more involved—the eighteen-count amended complaint has counts not restricted to $80,-000 and there is some suggestion that plain-tiff, now occupying the owner's shoes, is seeking approximately $125,000. In any event, this action has caused a blizzard of claims, cross-claims and counterclaims among and between all the parties having some relationship to that shipment.

What the various relationships may have been have not yet been fully defined as there has not yet been much discovery. As best as we can determine from the exhibits and the pleadings (and subject to subsequent correc-tion), we believe the scenario is as follows. Centron DPL Company (Centron) wanted to ship some computer equipment to Alaska. Somehow the equipment was transferred to BSM Corp. (BSM) in Schaumburg, Illinois. BSM's role is somewhat unclear as its plead-ings are not very informative on that point. Joyce Bros. Moving & Storage Co. crated the equipment there and plaintiff, a freight for-warder, arranged for shipment via All States Air Cargo, Inc. (All States) to an Alyeska Pipe Line Co. (Alyeska) location in Anchor-age, Alaska. The freight airbill specifies that BSM is the consignor, that Alyeska is the consignee, and that Barrett is the "third party."

In the normal course the shipment would have gone by air. But that was not the means of transportation. All States, whom various parties describe as a common carrier, although it claims it is really a freight-for-warder, apparently arranged for overland shipment first by Skyway Airfreight (Sky-way) to Minnesota and then by Prairie Ex-press, Inc. (Prairie) from there to Anchorage. Prairie did not, however, deliver the equip-ment to Alyeska. The goods went into a warehouse in Anchorage and Alyeska, appar-ently, arranged with Smyth Moving Service, Inc. (Smyth) to pick it up and deliver it across town. Where the damage occurred, and why, is much disputed, with accusations of poor crating, or at least negligent han-dling, leveled by most parties against the others.

■ The Carmack Amendment was enact-ed to simplify the shipper's problems in fix-ing responsibility in cases such as this. That statute permits the shipper to recover from the first or last carrier, without proving neg-

ligence, and then the indemnifying carrier can recover from whoever was at fault. *PNH Corp. v. Hullquist Corp.*, 843 F.2d 586, 589 (1st Cir.1988); *Akebono Brake Industry Co., Ltd. v. TNT Freight Express*, 1992 WL 183786, 1992 U.S.Dist. Lexis 10811 (S.D.N.Y. 1992); *Searle Chemicals, Inc. and Searle Pharmaceuticals, Inc. v. Earl C. Smith, Inc.*, No. 81 C 6789, 1984 WL 875 (N.D.Ill.1984); *Season–All Industries, Inc. v. Merchant Shippers*, 451 F.Supp. 727 (W.D.Pa.1978). The amendment does not help that much here. There are disputes about who was the shipper, Centron or BSM, whether the crating was poorly done by the shipper's agent (and thus the shipment was not delivered in good condition to the carrier), whether All States was a deregulated freight-forwarder not subject to the Carmack Amendment or a common carrier that was, whether Smyth was a local hauler neither subject to the Carmack Amendment nor to the jurisdiction of this court, and whether various parties gave proper notice of claims in a timely manner. There are other disputes as well.

Given the limited amount involved, the parties, at the urging of the court, have first addressed whether or not the defendants, or at least some of them, have their liability even further limited by the manner in which the equipment was shipped. All States and Prairie have filed a motion for partial summary judgment, claiming that the freight airbill and a related tariff limit their liability to 50 cents a pound or $6,586.50. Smyth had filed a similar motion, claiming that its liability is limited to probably $1,123.50.

There is no dispute that the equipment was transported pursuant to an airbill issued by All States on July 13, 1989. That airbill specifies that the declared value is "NDV" or "no declared value." The conditions on the reverse side expressly limit liability to 50 cents per pound of the damaged shipment unless a higher value is declared (and a higher rate paid). That limitation is further spelled out in the applicable tariff. The airbill conditions specify that they apply to all carriers involved in the shipment.

■ Plaintiff does not contend that it did not have notice of the conditions and tariff or that it did not have a full and fair opportunity to obtain greater protection, albeit at a higher rate. See *Co–Operative Shippers, Inc. v. The Atchison, Topeka and Santa Fe Railway Co.*, 840 F.2d 447, 451 (7th Cir. 1988); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1417 (7th Cir.1987), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); *Yamazen U.S.A., Inc. v. Chicago and Northwestern Transp. Co.*, 790 F.2d 621, 623 (7th Cir.1986). It argues, rather, that the shipment was supposed to go by air and instead it went by truck, substantially increasing the risk. It invokes the unreasonable deviation concept from maritime law. ·See *Pioneer Import Corp. v. The Lafcomo*, 159 F.2d 654, 654–55 (2d Cir.), *cert. denied*, 331 U.S. 821, 67 S.Ct. 1310, 91 L.Ed. 1838 (1947); *Yutana Barge Lines v. Northland Services*, 574 F.Supp. 1003, 1005 (W.D.Wash. 1983); *Jones v. The Flying Clipper*, 116 F.Supp. 386, 387 (S.D.N.Y.1953).

That concept did not survive the enactment of COGSA, at least in this circuit. *Compare Atlantic Mutual Insurance Co. v. Poseidon Schiffahrt*, 313 F.2d 872, 875 (7th Cir.), *cert. denied*, 375 U.S. 819, 84 S.Ct. 56, 11 L.Ed.2d 53 (1963), *with Nemeth v. General Steamship Corp., Ltd.*, 694 F.2d 609, 613 (9th Cir.1982). More to the point here, the concept developed in maritime law and we are unaware of any case in which the doctrine has been successfully invoked for a shipment lost or damaged when transported overland or by air. It characterizes a kind of negligence or misconduct, and recasting the alleged misconduct as a tort has not, generally, served to defeat agreed limitations on value. See *Reece v. Delta Air Lines, Inc.*, 731 F.Supp. 1131, 1134 (D.Me.1990); *Neal v. Republic Airlines, Inc.*, 605 F.Supp. 1145, 1148 (N.D.Ill.1985); *Blair v. Delta Air Lines, Inc.*, 344 F.Supp. 360, 366 (S.D.Fla.1972); *Milhizer v. Riddle Airlines, Inc.*, 185 F.Supp. 110, 112 (E.D.Mich.1960).

Defendants also contend that they are entitled to summary judgment because plaintiff has made no showing of increased risk. Plaintiff may well be unable to make that showing. Truck travel across the United States on interstate highways and up the Alcan Highway is far removed from a "Wages of Fear" trek of nitroglycerine on

primitive roads across the mountains in some remote area of South America. If, however, plaintiff could invoke the concept, then we question whether it would have to submit proof of the degree of enhanced risk at this juncture.

■ But we do not believe the concept is available to plaintiff in an inland transportation case. It is also not available for another reason. The airbill conditions specifically permit diversion to a motor carrier "unless shipper gives other instructions hereon" and, accordingly, it is difficult in those circumstances to find any unreasonable diversion when the airbill permits that diversion. *See Baloise Ins. Co., Ltd. v. United Airlines, Inc.,* 723 F.Supp. 195, 199 (S.D.N.Y.1989). Plaintiff seeks to avoid that conclusion by an affidavit of an employee stating that the All States representative was told that the computer had to be shipped by air and that the representative assured him that, notwithstanding any provisions to the contrary, it would go by air. This, plaintiff suggests, was a fraud. Possibly fraud can be a basis for avoiding the limitations provision or perhaps for reformation. *See Hughes,* 829 F.2d at 1418–1419. We think, though, that the representation, if made, is a purported oral modification of the airbill and conflicts with the airbill. Plaintiff could have insisted upon air shipment. All it had to do was include a written instruction to that effect on the airbill, the "hereon," as provided by the airbill conditions. We believe that the same considerations that militate against negligence or gross negligence exceptions to liability limitations also apply to oral and unrecorded modifications of a written agreement permitting only written modifications. We conclude that the liability of All States and Prairie is limited to $6,586.50.

■ Smyth is another matter. If it was merely the last carrier in an interstate shipment it would be covered by the All States airbill. And that airbill presumably covered delivery directly to Alyeska. It appears, however, that the shipment came to rest at a warehouse in Anchorage, and Alyeska made its own arrangements to move the equipment from the warehouse to its location. The shipment was made pursuant to a household goods bill-of-lading issued by Smyth to Alyeska that had a 30–cent per pound released valuation. It would appear that Alyeska was satisfied that the shipper had fulfilled its delivery obligations by delivery to the warehouse and that Alyeska accepted the goods there. If they had been damaged in the intracity trip, then Alyeska would have had a modest claim (at the limited liability rate) against Smyth, but, in those circumstances, we do not see how plaintiff has any claim against Smyth at all. Smyth is dismissed.