### TOKIO MARINE AND FIRE INSURANCE CO., LTD., Plaintiff,

v.

### NIPPON EXPRESS U.S.A. (ILLINOIS), INC., Nippon Express Co., Ltd., International Transportation Service, Inc., and Does 1 through 100, Defendants.

No. 99–CV–11981–CAS (Mcx).

United States District Court, C.D. California, Western Division.

Nov. 21, 2000.

---

George P. Hassapis, Michael W. Lodwick, Haight, Brown & Bonesteel, Santa Ana, CA, for Plaintiff.

Howard Lee Jacobs, Forgie & Jacobs, Westlake Village, CA, for Nippon Express USA, Inc.

Erich P. Wise, Sook H. Lee, Flynn, Delick & Wise, Long Beach, CA, for International Transportation Service, Inc.

## ORDER RE: STIPULATED LIABILITY OF DEFENDANT; CROSS MOTIONS FOR SUMMARY JUDGMENT AS TO DAMAGES

SNYDER, District Judge.

### I. *Introduction*

This action arises out of cargo damage to a shipment of car radio components that were aboard the M/V Brooklyn Bridge, on or about November 20, 1998. The cargo was in transit from Kobe, Japan to Rushville, Indiana, via the Port of Long Beach, California. The cargo is alleged to have been damaged while being discharged at the Port of Long Beach. As a result of the damage to the cargo, plaintiff Tokio Marine and Fire Insurance Co., Ltd. ("Tokio Marine") paid its assured, owner/consignee Fujitsu Ten, $710,470.00. Tokio Marine brings this action against defendants to recover the payments made to its assured.

Tokio Marine filed its complaint in the Superior Court for the County of Los Angeles on August 19, 1999, against defendants Nippon Express U.S.A. (Illinois), Inc., Nippon Express Co., Ltd. (collectively "Nippon") and International Transportation Service, Inc. ("ITS"). The complaint alleges claims for damage to cargo, breach of contract, negligence and breach of duty to care for property in bailment against all defendants, and for breach of warranty of workmanlike service against defendant ITS.

Defendant ITS was personally served on October 18, 1999. Defendant Nippon received copies of the summons and complaint by certified mail on October 20, 1999. On November 18, 1999, defendants removed the case to this Court. By order of the Court issued January 24, 2000, plaintiff's claims against Nippon were severed and transferred to the United States District Court for the Southern District of New York.

The plaintiff and the remaining defendant, ITS, are now before the Court on cross motions for summary judgment. The parties have stipulated that ITS is liable for the damage to the cargo; the Court will enter judgment for plaintiff accordingly. The parties agree that the sole question presented is whether, for purposes of the liability limitation of $500 per "package" set forth in the Carriage of Goods by Sea Act (COGSA), 46 App.U.S.C. § 1301 *et seq.*, the damaged cargo was contained in 177 packages, comprising the 177 "pieces" listed on the bill of lading, or only 33 packages, comprising the 33 "skids", also listed on the bill of lading, in which the 177 pieces were contained. If there were 177 packages, ITS's maximum liability is $88,500. If there were 33 packages, ITS's maximum liability is $16,500. *See* Def.'s Mot for Summ. J. at 1; Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2.

The Court heard oral argument on the parties' summary judgment motions on November 20, 2000.

II. *Standard for Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pac. Corp.,* 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at is-

sue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

### III. *Defendant's Motion for Summary Judgment*

The parties' briefs on defendant's motion for summary judgment focus on three issues: (a) the contents of the bill of lading, (b) the nature of the skids, and (c) the nature of the packaging of the "pieces" inside the skids. Facts pertinent to these issues will be set forth below.

### A. *The Bill of Lading*

It is undisputed that the bill of lading that pertains to the shipment in question provides that the COGSA applies to the damage in question, and limits defendant's liability to $500 per package. Pl.'s Stmt.

of Genuine Issues ¶ 9. The pertinent provision of the COGSA limits carriers' liability to:

> $500 per package .... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 App.U.S.C. § 1304(5). There is no contention that the shipper declared the value of the goods before shipment.

It is also undisputed that the number 33 appears in a column in the bill of lading headed "No. of Containers or pkgs." and that the expression "177 pieces" appears in column labeled "Kind of packages; description of goods." The pertinent portion of the bill of lading appears substantially as follows:

| No. of Containers or pkgs. | Kind of packages; description of goods |
|---|---|
| | "SHIPPER'S LOAD AND COUNT" <br> "SAID TO CONTAIN" <br> 1 CONTAINERS (S) <br> (33 SKIDS) <br> (177 PIECES) <br> CKD/SKD COMPONENTS FOR CAR RADIO <br><br> FREIGHT PREPAID <br> -------------- <br> 1 CONTAINER (S) (33 SKIDS) |
| Declared Value US$ | If shipper enters a value, the ad valorem rate will be charged (See Clause 24) |
| Total No. of Containers or Packages (In words) | ONE (1) CONTAINER (S) ONLY |

*See* Pl'.s Stmt. of Genuine Issues ¶ 8; Decl. of Hiroyuki Ohtake in Supp. of Def.'s Mot. for Summ. J. Ex. A.

██ In the Ninth Circuit, if the parties designate a number of packages in the bill of lading, they are contractually bound for COGSA purposes by the number of packages stated. *See Nemeth v. General Steamship Corp.,* 694 F.2d 609, 613–14 (9th Cir.1982) (concluding that three packages were shipped where bill of lading listed goods as "3 (three) cases household

goods"). This rule applies to numbers placed in a column whose heading indicates that it is the column for the number of packages. *See Travelers Indemnity Co. v. The Vessel Sam Houston,* 26 F.3d 895, 901 (9th Cir.1994) (holding that the parties designated the number of packages in the bill of lading when they filled in the numbers 18, 103 and 165 under the column heading "No. of Pkgs."). If the bill of lading specifies a number of packages, the Court need look no further to determine the number of packages:

"The number appearing under the heading "NO. OF PKGS." is our starting point for determining the number of packages for purposes of the COGSA per-package limitation, and unless the significance of that number is plainly contradicted by contrary evidence of the parties' intent, or unless the number refers to items that cannot qualify as 'packages,' it is also the ending point of our inquiry."

*Id.* at 902 (quoting *Seguros "Illimani" S.A. v. M/V Popi P*, 929 F.2d 89, 94 (2d Cir. 1991)).

■ In the instant case, the number 33 appears in the column headed "No. of Containers or Pkgs." The number one, representing the number of forty-foot metal shipping containers in which the cargo was contained, is in the same column, but this number cannot represent the number of COGSA packages under Ninth Circuit law. *See All Pacific Trading, Inc. v. M/V Hanjin Yosu*, 7 F.3d 1427, 1433 (9th Cir.1993) (holding that where bill of lading listed both number of containers and number of packages under heading "NO. OF PKGS. OR CONTAINERS," it was clear that the large shipping containers were not packages for COGSA purposes). The number 177 does not appear in that column, being placed instead under the heading "Kind of packages; description of goods." To indicate that the placement of the numbers in the two columns was not accidental, defendant has submitted examples of other bills of lading prepared by the carrier; in each of these, a number of containers and a number of "pallets" appears in the "No. of Containers or Pkgs." column, while a number of "pieces" appears in the "Kind of packages; description of goods" column. *See* Ohtake Decl., Ex. B. The Court concludes that the bill of lading shows that the parties are contractually bound by the number 33 as the number of packages.

Plaintiff argues that the bill of lading is at best ambiguous, because it contains at least three candidates for the number of packages: One, 33, and 177. The placement of these numbers in columns does not resolve the ambiguity, plaintiff argues, because the phrases "1 CONTAINER (S)" and "33 SKIDS" are printed across the two columns. Because the bill of lading is ambiguous, plaintiff concludes, it must be construed against the drafting carrier, and it is undisputed in this case that the carrier prepared the bill of lading. The Court concludes, however, that the bill of lading is not ambiguous. The numbers 1 and 33 were placed deliberately in the "No. of Containers or Pkgs." column, as indicated by similar placement in other bills of lading prepared by the carrier. One is the number of containers. The only remaining number in the relevant column, 33, is the number of packages.

■ Citing *M/V Hanjin Yosu, supra,* plaintiff relied on the proposition that "courts will not consider a container to be a COGSA package if [the] bill of lading discloses a number of packages within the container," *id.* at 1433 (citing *Universal Leaf Tobacco Co. v. Companhia De Navegacao Maritima Netumar*, 993 F.2d 414 (4th Cir.1993)). This proposition is irrelevant to the instant case. Defendant does not argue that the one shipping container is the package. The rule that a shipping container is not a package where the bill of lading lists a number of packages inside the shipping container does not imply that a skid cannot be a package if the bill of lading lists a number of smaller items inside the skid.

B. *The Skids and the Pieces*

■■ Where the number in the "packages" column "refers to items that cannot qualify as 'packages.'" *The Sam Houston, supra,* 26 F.3d at 902 (citation and

internal quotation marks omitted), courts in the Ninth Circuit may look beyond the bill of lading to determine the number of packages. In this case, there is no reason to conclude that "33 skids" refers to items that cannot be "packages" within the meaning of the COGSA. Defendant asserts that each skid consisted of a large cardboard sleeve wrapped around the contents and completely enclosing them, and banded with plastic bands onto a cardboard tray and wooden runners. Photographs submitted by defendant support this description. *See* Decl. of Ed Mitchell in Supp. of Def.'s Mot. for Summ. J., Ex. 1. The COGSA does not define "package," and the Ninth Circuit has held that "package" as used in the COGSA has its ordinary meaning. "Since no specialized or technical meaning was ascribed to the work 'package,' we must assume that Congress had none in mind and intended that this word be given its plain, ordinary meaning." *Hartford Fire Ins. Co. v. Pacific Far East Line, Inc.,* 491 F.2d 960, 963 (9th Cir.1974). The Court concludes that the skids as described in the parties' papers and shown in defendant's photographs fall within the ordinary meaning of the word "package."

Plaintiff cites a number of cases in an attempt to support the proposition that in any case where a set of smaller items is "palletized," or bound together and attached to a base such as a pallet, the smaller items should nevertheless be counted as separate packages for COGSA purposes if the separate items would have qualified as packages had they not been palletized. Of all the cases pertaining to palletized cargo cited by plaintiff, only one, *American & Far Eastern Trading Co. v. Sea–Land Service Corp.,* 493 F.Supp. 125 (N.D.Cal.1980), *aff'd without opinion,* 678 F.2d 830 (9th Cir.1982), is from within this circuit. In *American & Far Eastern,* the shipment consisted of cardboard boxes of cosmetics stacked on pallets and covered with transparent shrink-wrap, which bound the boxes to the pallets. *Id.* at 126. In concluding that the cardboard boxes, not the pallets, were the COGSA packages, the court relied on three factors: (1) the boxes themselves would have been suitable packages for shipping, as was indicated by the fact that the parties had shipped the same goods in the same boxes without pallets in the past; (2) unlike cases in which goods are attached to pallets by additional packaging material such as cardboard, here the shrink-wrap was a mere fastener, similar to the steel straps often used to attach cargo to pallets; (3) the carrier had notice of the composition of the pallet loads, because the shrink-wrap was transparent and because the shipping documents disclosed that each pallet contained 300 cases. The court also found that the shipping documents were ambiguous. *See id.* at 128.

The instant case is distinguishable from *American & Far Eastern* on each of these three points. First, plaintiff has not submitted evidence sufficient to raise a genuine issue of material fact with respect to the question whether the 177 pieces would have been suitable for shipping without being placed inside another package. Plaintiff contends that all 177 pieces were cardboard boxes. Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 7. In support of this contention, plaintiff refers to the photographs submitted by defendant. Two of these photographs appear to reveal cardboard boxes inside two damages skids. *See* Mitchell Decl., Ex. 1. Photograph Nos. 20–21. A total of six cardboard boxes are shown inside the skids, assuming the two photographs depict different skids rather than two views of the same skid. The remaining photographs either do not reveal any contents of the skids, or show numerous small plastic bags spilling from damages skids. *See id.,* Photograph Nos. 7–16. Thus there is no evidence in the

record that the skids contained 177 packages—or any other number except perhaps six—suitable for shipping on their own. Second, the cardboard sleeve enclosing the contents of the skids was more like the cardboard packaging the *American & Far Eastern* court distinguished than like the shrink-wrapped pallets. And third, the skids were not transparent, and the bill of lading was not ambiguous. *American & Far Eastern* thus does not support plaintiff's position.

Furthermore, there are cases from this circuit in which it was held that where cargo was contained in parcels which in turn were packed in larger parcels, the larger parcels were the COGSA packages. In *Nemeth, supra*, the Ninth Circuit held that household goods packed in three crates constituted three COGSA packages, even though there were numerous individually wrapped smaller parcels inside the crates. 694 F.2d at 613–14. And in *Omark Industries v. Associated Container Transportation*, 420 F.Supp. 139 (D.Or. 1976), the court held that six palletized units, not the 20 to 26 cardboard cartons inside each palletized unit, were the COGSA packages. The palletized units consisted of a cardboard shell concealing the cartons within and attached to wooden pallets by means of metal straps. *Id.* at 142. The court asserted that pallets are not analogous to large metal shipping containers, *id.* at 143, and also made the following pertinent observation:

> It should be noted that it is not usually the smallest packaged unit incorporated into a shipment that constitutes the COGSA package. On the contrary, the COGSA package will generally be the largest individuated unit of packed cargo made up by or for the shipper which is delivered and entrusted to the carrier.

*Id.* at 142. A witness designated by Fujitsu Ten, the owner or consignee of the goods at issue in the instant case, testified at deposition that the skids in question were packaged by Fujitsu Ten. *See* Depo. of Brian Scott Grissom, Ex. A. to Decl. of Erich P. Wise in Supp. of Def.'s Mot for Summ. J. at 18:1–24.

Plaintiff also relies on a number of cases from the Eleventh and Second Circuits. It is not clear that any of these cases support the result sought by plaintiff. *See, e.g., Sony Magnetic Products v. Merivienti O/Y*, 863 F.2d 1537, 1542 (11th Cir.1989) (holding that where bill of lading indicated 1,320 cartons, but did not indicate that the cartons were consolidated onto 52 pallets, the 1,320 cartons were the COGSA packages); *Vegas v. Compania Anonima Venezolana De Navegacion*, 720 F.2d 629, 630–31 (11th Cir.1983) (holding that where bill of lading stated both the number of palletized master cartons and the number of smaller cartons inside the palletized master cartons, the smaller cartons were the COGSA packages, because the palletized master cartons were analogous to shipping containers); *Allied International American Trading Corp. v. S.S. "Yang Ming"*, 672 F.2d 1055, 1056–57 (2nd Cir.1982) (holding that 30 pallets were the COGSA packages where the bill of lading stated that there were 30 packages). Plaintiff relies especially heavily on *Sony, supra*, because it involved cartons on pallets and the court determined that the cartons were the COGSA packages. Plaintiff's reliance on these facts is misplaced, however, because the court's decision in *Sony* was based on its interpretation of the bill of lading.

The Court grants defendant's motion for summary judgment.

IV. *Plaintiff's Motion for Summary Judgment*

As stated above, the Court grants defendant's motion for summary judgment. Ac-

cordingly, plaintiff's motion for summary judgment is denied.

## V. Subsequent Proceedings

The parties submitted no briefing on the question of costs of suit. At the hearing on the instant motions, counsel for defendant argued that defendant should recover costs if defendant's summary judgment motion is granted. Counsel for plaintiff argued that plaintiff should recover costs because defendant has stipulated to liability, and even if defendant's motion is granted, plaintiff will receive judgment for $16,500. The Court concludes that plaintiff is the prevailing party, and shall recover its costs of suit.

## VI. Conclusion

Pursuant to the parties' stipulation, the Court concludes that defendant is liable. For the reasons stated above, defendant's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED. The Court concludes that the goods in question were contained in 33 packages for purposes of the $500 limitation on liability set forth in the COGSA, and that defendant's maximum liability is therefore $16,500. As indicated in the proposed order submitted by defendant, defendant does not contend that its liability is less than the statutory maximum. Therefore, the Court concludes that defendant is liable for damages in the amount of $16,500.

IT IS SO ORDERED.